471 A.2d 533

**COMMONWEALTH of Pennsylvania ex rel. Rita L. FALWELL,**

v.

**A.S. DI GIACINTO, Warden of Northampton County Prison.**

**Appeal of Rita L. FALWELL.**

Superior Court of Pennsylvania.

Submitted March 8, 1982.

Filed Jan. 27, 1984.

202

Margaret H. Poswistilo, Easton, for appellant.

John D. DiGiacomo, Easton, for appellee.

Before WICKERSHAM, CIRILLO and LIPEZ, JJ.

LIPEZ, Judge:

This is an appeal from an order denying a petition for habeas corpus, which requested that defendant be released from prison, to which the court below had sentenced defendant after finding her in contempt of court. We reverse the order of the court, vacate the judgments of sentence for criminal contempt and discharge defendant.

On August 7, 1981 defendant, who was not represented by an attorney, appeared in the court below as the defendant in a noncompliance hearing in a support matter. The complete transcript of that proceeding states as follows:

THE COURT: Do you have something there for me? Have you been looking for work?

THE DEFENDANT: That is my second paper.

THE COURT: Okay.

THE DEFENDANT: I have been speaking to Attorney Mayrosh in the Public Defender's office. He stated that on behalf of Alcohol Counseling I went to, with him, to the counselor—whatever, and he says that I wasn't suited for Head Start. He—they still carried this. He told me to say this to you.

THE COURT: Do you want to go into a treatment program?

THE DEFENDANT: It is not necessary.

THE COURT: You have had something to drink this morning, haven't you?

THE DEFENDANT: Huh?

THE COURT: You have had something to drink this morning?

THE DEFENDANT: Beer.

THE COURT: Do you want to do anything about it?

THE DEFENDANT: It is not anything he can do. He took me up there to the thing—to the treatment. He don't feel it is worth it.

MR. RIED: I ask that some sort of treatment program be directed. I think she will feel a lot better if she was a productive citizen. I don't believe this, that she doesn't need help, and I don't believe any qualified person has told her.

THE COURT: How many beers did you have this morning?

THE DEFENDANT: About four.

THE COURT: It can be checked out?

MR. RIED: Yes.

THE COURT: I find you in Contempt of Court for showing up in my courtroom inebriated. I place you in the custody of the court officer, and I am going to direct that you be placed under his control. I am going to commit you to Northampton County Prison, and I want them to do a workup on you, and I will determine what we can do to straighten you out. I will not have people coming in here in your condition.

It is not to exceed three months, and if you successfully complete a program, such as they recommend for you, you will be purged of your Contempt. But, right now, I am going to direct that you be taken in his custody over to Northampton County Prison, and I am going to direct that she is to be placed in an appropriate treatment program for her condition.

I can smell the liquor all of the way over here. You don't want to face up to it, but you have got a problem. If somebody doesn't do something about it, you have only one way to go.

On the same day as this hearing, the court entered the following order:

AND NOW, this 7th day of August, 1981, the defendant appears before the Court, together with counsel for the Department of Public Welfare, on a petition and rule to show cause why the defendant should not be held in contempt for non-compliance of a pending Court Order. Eo die the defendant is found in contempt of Court for appearing inebriated and is placed in the custody of the

Court Officer to be incarcerated in Northampton County Prison for alcohol counseling and evaluation.

Defendant will be purged of her contempt charge upon successful completion of a recommended treatment or incarceration in Northampton County Prison for a period not to exceed three (3) months.

Three days later, the court entered the following order: AND NOW, this 10th day of August, 1981, after a full review in this matter wherein Court finds said defendant cannot participate in drug and alcohol counseling under any security, it is hereby ordered and directed that the said defendant may be released from Northampton County Prison under special probation in accordance with Domestic Relations Probation rules 5–5–81 on condition she admit herself to Eagleville for treatment for a period no less than six (6) months.

In the event the said defendant wishes to leave the institution or does leave the institution prior to completion of the said program, the authorities at Eagleville are directed to immediately notify the Domestic Relations Section, and a Bench Warrant is to issue, and the Domestic Relations Section is directed to take the said defendant into custody and incarcerate her in Northampton County Prison for further disposition by this Court.

It is further ordered in the event she does complete the said program, she will be purged of her pending contempt charge, and further disposition will be made on the pending support matter.

 Shortly thereafter, defendant acquired counsel,[1] who filed a petition for habeas corpus on August 19, 1981. The rule was made returnable on August 26, when the judge and defendant's counsel held a brief on-the-record discussion of the case in chambers.[2] On the same day, the judge entered an order denying the petition for habeas

1. How counsel came to represent defendant is not apparent from the record.

2. The District attorney's office was represented by an assistant DA who stated that his office was taking no position in the matter. The district attorney's office has not filed a brief in this appeal.

corpus, and on September 18, 1981, defendant filed this appeal.[3] Because we agree with defendant's contention that the record is insufficient to support a finding of criminal contempt,[4] we need not consider defendant's other claims.[5]

3. Ordinarily defendant would be expected to appeal the judgment of sentence directly, and this appeal might be considered untimely, since it was taken more than 30 days after both the August 7 and August 10 judgments of sentence. Defendant, however, was unrepresented by counsel, and was not told of her right to counsel or of the necessity for appealing so the 30-day period could not begin to run. *See Commonwealth v. Dorman,* 272 Pa.Super.Ct. 149, 156, 414 A.2d 713, 717 (1979). Moreover, counsel was placed in a dilemma when she entered the case, because there had been no prior opportunity to raise any issues at all before the trial judge. Had counsel simply filed a direct appeal at that point, the issues could no longer be raised before the lower court, which would no longer have jurisdiction. Pa.R.A.P. 1701(a). Neither could the issues be raised for the first time in the appeal to this court. Pa.R.A.P. 302(a). Counsel would then have to argue that the lower court had effectively denied defendant her right to appeal because there had been no opportunity to preserve the issues, and this court would vacate the judgment of sentence and remand so the issues could be raised for the first time before the lower court. Counsel avoided this circuitous process by submitting the issues to the lower court in the petition for habeas corpus, and appealing the denial of the petition to this court. Counsel took the only course open to her in the procedural posture which the judge had placed the case. *Cf. Conaway v. 20th Century Corporation,* 491 Pa. 189, 196–97, 420 A.2d 405, 409 (1980). We agree with counsel's argument that the defendant was effectively denied her original right to appeal, and the proper remedy is to treat this appeal as if it were taken directly from the judgment of sentence. Since we treat this as a direct appeal rather than a collateral attack on defendant's conviction, the appeal is not mooted by defendant's release from prison, as it would be in the case of a collateral attack. *See* 42 Pa.C.S. § 9543(2).

4. At one point the opinion of the court below refers to criminal contempt, while at another point it states that defendant was given "what was in effect a civil commitment." It is clear that defendant was held in criminal contempt, because the dominant purpose of the court below was to vindicate the dignity and authority of the court, rather than to coerce obedience to a court order for the benefit of a private party. *Commonwealth v. Marcone,* 487 Pa. 572, 577, 410 A.2d 759, 762 (1980). Although the court included some elements similar to civil contempt in both the August 7 and 10 sentences, this did not change the criminal nature of defendant's contempt conviction. *See Commonwealth v. Strickler,* 481 Pa. 579, 393 A.2d 313 (1978); *Commonwealth v. Falkenhan,* 306 Pa.Super.Ct. 330, 452 A.2d 750 (1982).

5. Defendant claims she was denied her rights to *Miranda* warnings, notice of charges and an opportunity to be heard, counsel, appeal,

At the time petitioner was found in contempt, section 4131 of the Judicial Code provided:

The power of the several courts of this Commonwealth to issue attachments and inflict summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S. § 4131, renumbered as 42 Pa.C.S. § 4132 and amended, effective February 18, 1983. Subsections (1) and (2) are plainly inapplicable, so defendant's contempt conviction can only be upheld if it falls within subsection (3).

In holding that defendant's being "inebriated" was a proper basis to punish defendant summarily for direct criminal contempt, the opinion of the court below relies on *Commonwealth v. Clark*, 13 Pa.C.C. 439 (Lackawanna Co. 1893), which states:

It would be a contempt of this court, and I have committed parties for that very reason, for coming here in attendance upon the court in a drunken condition. We have sometimes, unfortunately, some witnesses who do not regard the obligation they are under, and come and take their place in the witness-box drunk. I have committed one man for that, and probably ought to have commit-

bail, and a fair sentence. Finally, defendant claims that increasing the three-month sentence of August 7 to six months on August 10 constituted double jeopardy. Because the evidence was insufficient to support defendant's conviction, neither judgment of sentence can stand, and we have vacated both of them.

ted more. I just instance that as bearing upon this question. If a party were to have a case on trial, and an officer of the law were to come here in a drunken condition, I should regard it as a contempt of court. So upon that occasion, if the defendant comes before Alderman DeLong drunk, not simply, I do not mean to say, being under some influence of liquor, but drunk, as we understood it, intoxicated, so as to really be disorderly from that very circumstance, that would be a contempt, and he would be guilty as charged here.

*Id.* at 442.

■■■■ As this passage explicity acknowledges, merely being under some influence of liquor will not by itself constitute contempt. The drunkenness must be such that it obstructs the administration of justice, which means that it must interfere with or disrupt the orderly process of the court. *In re Johnson,* 467 Pa. 552, 558, 359 A.2d 739, 742 (1976); *Commonwealth v. Falkenhan,* 306 Pa.Super.Ct. 330, 340, 452 A.2d 750, 755 (1982). It is true that defendant answered "Huh?" to one question, and two of defendant's answers show a mild degree of incoherence, which is a common phenomenon in hearing transcripts, whether the speaker is inebriated or not. These facts alone hardly demonstrate beyond a reasonable doubt that defendant obstructed the administration of justice. Indeed, the principal evidence that defendant had consumed alcohol comes from defendant's clear, direct answers to the court's questions. The record does not show that defendant's consumption of alcohol before coming to court in any way caused delay or disruption of the hearing, which would constitute a contumacious obstruction of the administration of justice. *See In re Johnson, supra; Commonwealth v. Falkenhan, supra.*

Order reversed, judgments of sentence vacated and defendant is discharged.