**In re L.G., Appellant.**

No. 92–FS–1577.

District of Columbia Court of Appeals.

Argued Feb. 3, 1994.

Decided March 31, 1994.

Linda Elliott, Public Defender Service, with whom James Klein, Public Defender Service, Washington, DC, was on the brief, for appellant.

Rosalyn Calbert–Groce, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Coun-

sel, Washington, DC, were on the brief, for the District of Columbia.

Before FARRELL, WAGNER, and KING, Associate Judges.

**KING, Associate Judge:**

L.G., a juvenile, appeals from an order of the Superior Court summarily adjudging him in contempt of court for using profanity on three occasions while appearing as a witness for the defense in a criminal trial. L.G. principally contends that the finding of contempt is not supported by the evidence. We agree and, accordingly, we reverse and order that the contempt charge be dismissed.

## I.

On November 16, 1992, sixteen-year-old L.G. testified for the defense at the murder trial of his uncle, who was an adult.[1] During cross-examination, the prosecutor attempted to establish that the uncle was directly involved in the murder and that L.G. had lied in his direct examination to protect the uncle. The first use of profanity occurred after the prosecutor asked L.G. about his initial confrontation with the deceased:

THE GOVERNMENT: But you are [L.G.]. Right?

L.G.: Yes, I am [L.G.].

THE GOVERNMENT: And you always got your weapon with you. Right[?]

L.G.: It was in the car at the time.

THE GOVERNMENT: You just told [defense counsel] a few minutes ago, you always have you[r] gun with you. Right? You said—

L.G.: I said it was in the car, motherfucker. Don't be coming hollering at me like that, man.

Judge Ryan said nothing to L.G., and the prosecutor continued her questioning.

The second incident occurred, some twelve pages later in the transcript, as the prosecutor pressed L.G. on the inconsistencies in his account compared with his uncle's testimony:

THE GOVERNMENT: My question is, sir, is if your uncle said that the two of you went inside, came out and sat on these railings, that's not true. Is that correct?

L.G.: That's what I am saying. Not true.

THE GOVERNMENT: So, if your uncle said that [the deceased] was minding his own business and walked out of this building, didn't say a thing to anybody, didn't pull a weapon on anybody, and just walked out of here and then you jumped off the steps and started shooting at him while your uncle is sitting right there, that's not true. Is that what you are saying?

L.G.: Hold on, man. You got to slow the fuck down. I don't know what the fuck you are saying.

At this point, the judge admonished L.G.: "Listen. You may be a juvenile but you are in an adult court. You are going to be held to adult standards here." L.G.'s testimony ended shortly thereafter without further incident.

As L.G. was walking away from the witness stand, however, he passed close to the prosecutor, allegedly calling her a "stinking bitch." That remark was heard by the prosecutor and was recorded by the court reporter; however, Judge Ryan did not hear it. The prosecutor immediately informed the judge who then held a bench conference with the prosecutor and the attorney for L.G.'s uncle. Judge Ryan informed the two attorneys of his intention to hold L.G. in criminal contempt and asked the prosecutor to provide him with authority for a contempt order. The next day the prosecutor filed a motion seeking an order requiring L.G. to show cause why he should not be held in contempt.

On November 18, 1992, two days after L.G.'s testimony at trial, L.G. appeared in court with his own counsel, and Judge Ryan conducted a summary contempt proceeding. The trial judge remarked:

The points, I think, have been outlined in the motion papers that have been submit-

---

1. When L.G., fifteen years old at the time of the offense, testified at his uncle's trial he had already been tried and adjudicated a delinquent for his involvement in the same murder. A two-year commitment was imposed on October 16, 1992.

ted to me by the U.S. Attorney. But I personally certify, I recall and I heard him say, he used the word fuck several times in his testimony. I have to admit I didn't hear the stinking bitch remark. I didn't personally. But from what I heard personally, I think he committed contempt in open court.

L.G. was then sentenced.[2] On November 19, 1992, the trial judge issued a written certification order, which provided:

I, Judge Joseph M.F. Ryan, hereby certify, pursuant to S.C. Criminal Rule 42(a) concerning summary contempt findings, that the following conduct occurred in my courtroom on November 16, 1992:

Juvenile [L.G.] appeared as a witness to testify on behalf of his uncle ... at [the uncle's] trial for premeditated murder. [L.G.] had been previously convicted of the same crime in a separate juvenile proceeding.

[L.G.] appeared agitated throughout his testimony. *The word "fuck" and its many derivatives peppered [L.G.'s] description of the events* surrounding the murder. I admonished [L.G.] that he was in an adult court and needed to behave accordingly. *He continued to use outrageous language, calling the prosecutor a "motherfucker".*

The court reporter, the United States Marshall, and [the] Assistant United States Attorney ... all reported that *[L.G.] also called [the prosecutor] a "stink-*

ing bitch". Although I did not hear this comment, [L.G.'s] behavior and comments give me no reason to doubt that he also made this remark.

(Emphasis added.)

## II.

A judge of the Superior Court "may punish for disobedience of an order or for contempt committed in the presence of the court." D.C.Code § 11–944 (1989). Criminal contempt against a juvenile may be imposed summarily "if the judge certifies that he [or she] saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the Court." Super.Ct.Juv.R. 42(a).[3] In a summary contempt proceeding, the trial judge must set forth "with particularity," in a written certification, the grounds for the contempt finding. *In re Gorfkle,* 444 A.2d 934, 939 (D.C.1982). On appeal, this court examines "the evidence underlying these ... reasons to ascertain what conduct constituted the contempt." *In re Kraut,* 580 A.2d 1305, 1312 (D.C.1990) (internal quotation and citation omitted).

Judge Ryan relied on three separate grounds, italicized above, for summarily adjudging L.G. in contempt: (1) peppering his testimony with the word "fuck" and derivative forms of that word; (2) using outra-

---

2. The trial judge, suspending execution of the sentence, placed L.G. on supervised probation for one year, pursuant to D.C.Code § 24–803(a) (1993 Supp.), with two-hundred hours of community service. The same day, Judge Ryan filed a "Judgment and Commitment/Probation Order," a Criminal Division form used to record the sentence of adults, which provided that the sentence imposed was to run consecutively to any other sentence L.G. was then serving. Two days later, the trial judge filed a Family Division "Disposition Order," applicable only to juveniles, indicating that L.G. was "in need of supervision" and ordered that L.G. serve both a period of probation and two-hundred hours of community service following completion of the commitment imposed on October 16, 1992. The latter order was issued *nunc pro tunc* to the date of the "Judgment and Commitment/Probation Order."

In addition, we note that the prosecuting attorney at both the trial, during which the profanity occurred, and at the summary contempt pro-

ceeding, was a representative of the office of the United States Attorney. Delinquent acts committed by a sixteen year old are prosecuted by the Office of the Corporation Counsel ("OCC"). *See* D.C.Code § 16–2305 (1989); *but see* D.C.Code § 16–2301(3) (1989) (office of the United States Attorney may elect to prosecute as an adult a sixteen year old charged with certain enumerated violent offenses). No representative of the OCC made an appearance during any of the proceedings in the trial court; however, in this court, Corporation Counsel filed a brief in support of the action by the trial judge and participated in oral argument.

3. Although Judge Ryan cited Super.Ct.Crim.R. 42(a) as authority for the contempt ruling, the government acknowledges that the juvenile rule applies. The criminal court rule and juvenile rule, however, are virtually identical except the latter provides that a contempt in the presence of the court by a child shall be "disposed of" rather than "punished." Super.Ct.Juv.R. 42(a).

geous language and calling the prosecutor a "motherfucker" after he had been admonished by the trial judge; and (3) calling the prosecutor a "stinking bitch" after leaving the witness stand. It may be that each use of profanity standing alone would constitute summary contempt if heard by the judge and committed in the court's presence,[4] and for our purposes we will assume, without deciding, that each does.[5] Here, however, the government concedes that the second ground—that L.G. "continue[d] to use outrageous language" and called the prosecutor a "motherfucker" in disobedience of the trial judge's admonition—lacks evidentiary support.[6] The government also concedes that the trial judge could not proceed by summary contempt on the third ground because he did not hear the remark.[7] Therefore, we must decide whether a summary contempt citation, based on three separate grounds, can be supported if there is evidentiary sup-

port for only one of them. We conclude on the facts of this case that it cannot.

In *Kraut, supra,* 580 A.2d at 1309–10, 1312 n. 6, an attorney was summarily convicted in a single count of criminal contempt, based on three separate grounds. This court, holding that one of the grounds was not supported by sufficient evidence, reversed:

> Our review ... must be based on the grounds actually cited by the court in its Rule 42(a) statement. [The trial judge's] written statement indicated that there were three grounds which cumulatively "rose to the level of criminal contempt." We would not be warranted in inferring the judge ... considered [the attorney] in contempt for fewer than these three. Had he wished to hold [the attorney] in contempt based only on one or two of the grounds, his written statement—essentially defining the elements of the crime for this case—should have so indicated. We

---

**4.** The government concedes that, because the trial judge did not hear the profanity alleged to have been directed at the prosecutor by L.G. after he had left the witness stand, there could be no summary contempt for that incident. If the alleged contumacious conduct is not heard by the judge or if it occurs outside the presence of the court any contempt proceeding, involving an adult, may only be conducted by notice. *See Swisher v. United States,* 572 A.2d 85, 90–94 (D.C.1990); Super.Ct.Crim.R. 42(b); *see also In re Schwartz,* 391 A.2d 278, 281 (D.C.1978) (observing that "[t]he power to punish summarily should be exercised sparingly") (citations omitted). The corresponding juvenile rule, however, does not authorize contempt for juveniles by notice. *See Super.Ct.Juv.R.* 42(b) ("criminal contempt shall be brought only against a person who is not a child and shall ... be prosecuted on notice").

**5.** In light of our resolution of the issue presented, we have no need to decide whether any one of the instances of profanity, standing alone, would be contumacious. That issue has never been decided by this court; however, state courts have uniformly held that the use of profane language in court is, by itself, grounds for contempt. *See e.g., Jackson v. Bailey,* 221 Conn. 498, 605 A.2d 1350, 1352–53 (proper to summarily hold in contempt for profanities uttered at trial judge), *cert. denied,* —— U.S. ——, 113 S.Ct. 216, 121 L.Ed.2d 155 (1992); *Martinez v. State,* 339 So.2d 1133, 1134–35 (Fla.Dist.Ct.App.1976) (profanity uttered directly to trial judge was basis for criminal contempt), *aff'd,* 346 So.2d 68 (Fla.1977); *State v. Allen,* 145 Vt. 593, 496 A.2d 168, 171–72 (1985) (grossly obscene remark directed at the court while in session was immediately punisha-

ble); *cf. People v. Barrett,* 35 Ill.App.3d 939, 342 N.E.2d 775, 777 (1976) (affirming criminal contempt judgment; holding that because obscenities and profanities were not directed at trial judge, judge was not required to recuse); *Woody v. Oklahoma ex rel. Allen,* 572 P.2d 241, 244 (Okla.Crim.App.1977) (affirming criminal contempt judgment for making obscene gestures and threats to witnesses; holding that it was not necessary that contemptuous behavior be directed at the trial court itself since the actions were "committed in the presence of any one of the constituent parts of the court while engaged in the business devolved upon it by law") (internal quotation and citation omitted).

**6.** It is clear from the trial transcript that L.G. did not call the prosecutor a "motherfucker" after being warned by Judge Ryan to conduct himself as an adult. Further, there is nothing in L.G.'s testimony, after Judge Ryan's admonishment, that was either cited by the trial judge or been brought to our attention by the government, that could constitute "outrageous language." The use of the word "motherfucker" was the first use of profanity by L.G. during his testimony, and Judge Ryan did not immediately admonish him on that account.

We note that in the motion seeking an order requiring L.G. to show cause why he should not be held in contempt, purportedly relied on by Judge Ryan, *see* quote at 604–605, *supra,* the prosecutor asserted—inaccurately—that L.G. "continued to use the word 'fuck'" after being admonished.

**7.** *See* note 4, *supra.*

cannot substitute our own judgment to find [the attorney] in contempt of the trial court for reasons not clearly articulated by the trial court, even if the evidence would support such a finding.

Id. at 1313–14 (citations omitted). Thus, reversal was required because the evidence did not support the ruling with respect to one of the grounds. *Id.* at 1314.

 In the instant case, Judge Ryan ruled, in the written certification, that the contempt was based upon "the following conduct [that] occurred in my courtroom on November 16, 1992." The three separate grounds noted above were then set forth. Further, during the contempt hearing the trial judge remarked that he was finding L.G. in contempt based upon "what [he] heard personally ... in open court." In neither the written certification nor the oral ruling did Judge Ryan give any indication that he was ruling that each use of profanity, standing alone, constituted a separate and distinct contemptuous act. Although Judge Ryan did not declare in the written order that the three uses of profanity "cumulatively 'rose to the level of criminal contempt,'" as did the trial judge in *Kraut, id.* at 1313, we think it clear from the written order and his oral remarks that Judge Ryan considered the three incidents together to constitute a single count of contempt, i.e., a "critical mass" of contemptuous behavior. *Cf. Smithsonian v. Department of Employment Servs.,* 514 A.2d 1191, 1194 (D.C.1986). As we observed in *Kraut,* had Judge Ryan wished to hold L.G. "in contempt based only on one or two of the grounds ... [he] should have so indicated." *Kraut, supra,* 580 A.2d at 1314. In short, "[w]e cannot substitute our own judgment to find [L.G.] in contempt of the trial court for reasons not clearly articulated by the trial court." *Id.* Therefore, because there is sufficient evidentiary support for only one of the grounds relied upon, and since the summary contempt adjudication was based upon a finding on all three of the grounds considered, the contempt conviction cannot stand. Ac-

cordingly, we reverse and order that the charge be dismissed.[8]

*So ordered.*

L.G.'s due process rights by summarily adjudicating him in contempt and that the contempt sentences ordered by the trial judge were illegal.

---

8. In light of our holding that the contempt conviction must be reversed for lack of sufficient evidence, we do not address appellant's other contentions, namely, that the trial judge violated