Richard Allen BETHARD, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 92–CO–998.

District of Columbia Court of Appeals.

Argued Sept. 16, 1994.
Decided Nov. 10, 1994.

Boniface K. Cobbina, appointed by the court, Washington, DC, for appellant.

Phillip A. Lattimore, III, Asst. Corp. Counsel, with whom Vanessa Ruiz, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for appellee.

Before KING and SULLIVAN, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

A trial judge summarily found appellant guilty of criminal contempt under Super.Ct.Crim.R. 42(a) (1993), citing appellant's "overall disruptive behavior" in the morning while he was waiting in the courtroom for his traffic case to be called, his "state of stupor" throughout the day, and, his repeated attempts "to verbally interrupt the court" when he was called before it in the afternoon. The court sentenced appellant to 30 days in jail. See Court's Order, Appendix, *infra.*

On appeal, appellant contends that the evidence did not show his behavior to be sufficiently willful or disruptive to support a finding of criminal contempt, and, that the summary conviction and sentencing violated his due process rights because the court's authority was not so threatened by appellant's alleged contemptuous behavior as to warrant immediate vindication. We agree with appellant that his behavior was not criminally contemptuous, and, that, even if it was, summary proceeding was not appropriate here.[1] Accordingly, because appellant has already served his 30 day sentence, we reverse appellant's contempt conviction and order the proceedings dismissed as "just in the circumstances." D.C.Code § 17–306 (1989).[2]

## I.

On August 17, 1992, appellant reported for trial on a charge of operating a vehicle while under the influence of drugs. D.C.Code § 40–716(b)(1) (1990 Repl.). He sat in the public section of the courtroom, unaccompanied by his lawyer, during the morning calendar call. During this time, the judge observed appellant to "nod out" in his seat and, on three or four occasions, to stumble over other people as he entered and exited his row. [Order of Contempt, at 1–2]

Upon observing appellant's disruptive behavior, the court attempted repeatedly to locate appellant's trial counsel. In the meantime the court concluded that appellant's conduct was "so disruptive that the court could not carry out its normal functions," and the court ordered appellant "stepped back" by the U.S. Marshal Service.[3] [Order at 2]

The record shows that when appellant's trial counsel was located appellant's traffic case was called before the court. The court informed appellant's counsel of appellant's disruptive behavior and stated that it was "going to order [appellant] down for [drug] testing now and then the Court will make a determination whether to summarily hold him in contempt." [4]

Appellant's case was called again later that morning. The court immediately asked for the results of appellant's drug test and was informed that appellant had been unable to provide a urine sample. Appellant was then

1. In light of our disposition of the aforementioned claims, we need not reach appellant's claim that the judge should have deferred imposing sentence until a pre-sentence report could be prepared.

2. In its original filing, the government's sole argument in opposition to this appeal was that appellant failed to meet his burden of presenting this court with a sufficient record on appeal because a transcript of the proceeding below was not included. *See Cobb v. Standard Drug Co., Inc.,* 453 A.2d 110, 111 (D.C.1982) (appellant must present the appellate court with affirmative evidence that error occurred). Since this is a criminal appeal with court-appointed counsel ordered, *sua sponte,* a transcript of the proceeding below. Once that transcript was made a part of the record we requested and received supplemental briefing from the government on the merits of the issues raised by appellant.

As to any implications flowing from our disposition here, *see In re Kraut,* 580 A.2d 1305, 1314 n. 9 (D.C.1990).

3. We note that appellant has not challenged the authority of the court to order a defendant, who is seated in the public section of the courtroom waiting for his case to be called, into the custody of the U.S. Marshal Service under these circumstances. Thus, we have no occasion to reach this issue.

4. Appellant did not object to the court's order at the time or on appeal. Therefore, we have no occasion to reach this issue. *See* note 3, *supra.* We note that this court has upheld a *civil* contempt order against a government witness for refusing to submit to a drug test (which the court ordered due to the witness' demeanor during her testimony). *In re Scott,* 517 A.2d 310 (D.C.1986). While we found that the court had jurisdiction to issue this type of order, we did not reach the question of whether a drug test was proper under the particular circumstances presented in *Scott.* Instead, we affirmed the order on the basis of appellant's failure to seek a stay before disobeying the order.

returned to the custody of the U.S. Marshal to complete the drug test. According to the record it was at that time that the judge advised the prosecution to release its witnesses because the appellant was in "no condition" to go to trial that day. Later that afternoon, when the drug test was complete, appellant's traffic case was again called before the court.

The court noted its receipt of appellant's positive test results. After inviting appellant's attorney, and the Assistant Corporation Counsel prosecuting the traffic offense, to speak to the court's concern over appellant's disruptive courtroom conduct and the issue of criminal contempt,[5] the court summarily found appellant in criminal contempt.[6]

## II.

■■■ The elements of criminal contempt are "(1) willful disobedience; (2) of a court order; and (3) causing an obstruction of the orderly administration of justice." *In re Thompson*, 454 A.2d 1324, 1326 (D.C.1982) (per curiam). Each element must be proved beyond a reasonable doubt. *In re Gorfkle*, 444 A.2d 934, 939 (D.C.1982). "The offense

requires both a contemptuous act and a wrongful state of mind." *Swisher v. United States*, 572 A.2d 85, 89 (D.C.1990) (citing *Gorfkle, supra*, 444 A.2d at 939–40). A mere finding of improper conduct is not sufficient, rather we must find a "willful attempt [by the contemnor] to show disrespect for the court or to disrupt the proceedings." *Gorfkle, supra*, 444 A.2d at 940 (footnote omitted).

■■ We review an appellant's contemptuous acts "in light of the surrounding circumstances." *In re Ellis*, 264 A.2d 300, 301 (D.C.1970). If the evidence shows that by his or her conduct an appellant " 'over-step[ped] the bounds of propriety and refuse[d] to heed the admonitions of the court or' ... 'a lawful order of the court,' " *id.* (emphasis in original) (quoting *Jones v. United States*, 80 U.S.App.D.C. 109, 110, 151 F.2d 289, 290 (1945)), he or she will be found to have committed contempt.

■■ Appellant argues that there is insufficient evidence to establish his "willful disobedience." *See Thompson, supra*, 454 A.2d at 1326.[7] We note that the court, in its Order

5. Appellant's trial counsel stated that
  [t]his is an unfortunate incident; but, I don't see where the defendant's conduct can be construed as actual contempt, either civil or criminal. If there's any civil contempt he's proved himself by voluntarily offering samples. If there's any criminal contempt, I submit from the total facts and circumstances which exist in this case, his intention here was to make good—a good faith effort to present himself to meet his court obligation, which he did. Unfortunately, apparently we're dealing with a sick person, a sick drug addict and in spite of his good intentions he couldn't follow through with them because he would not have made a competent party to trial.
  The Assistant Corporation Counsel stated that "the government requests that this defendant be held, bring him back up on Thursday, that'll give him time to come down from his high and we can set it for status then or disposition...."

6. After the judge found appellant in criminal contempt, she sentenced him summarily. Because we need not reach this phase of the proceeding in order to dispose of this case, *see* note 1, *supra*, we do not address the summary sentencing here.

7. In order to determine whether there is sufficient evidence in the record to support a finding of criminal contempt, we look only to appellant's

actions *prior* to being ordered to undergo a drug test. At the time of her ruling the judge also referenced the "continuous nature" of appellant's contempt indicating that appellant was "still in a state" when he appeared before her in the afternoon, and appellant's attempts to "verbally interrupt the court throughout the afternoon proceeding." [Order at 4]

We do not believe that appellant returning to the court in the same "state" he was in when he was stepped back earlier that day, constitutes additional evidence of willful disobedience to the court. Thus, it should not be weighed in the balance when determining whether criminal contempt actually occurred in this case and whether summary adjudication of the alleged contempt was warranted. *See also* note 11, *infra*.

Further, we find no evidence in the transcript to support the judge's finding that appellant repeatedly attempted to interrupt her in the afternoon proceeding. The record of the afternoon proceeding shows that appellant *spoke* on only three occasions prior to the judge finding him in criminal contempt. In the first instance, he attempted to supplement his counsel's statement about the matter, stating, "Could I have—could I have just one—." He stopped speaking when his counsel indicated that he should be quiet. Next, when opposing counsel orally reviewed the procedural history of appellant's traffic case, appel-

of Contempt, *see* Appendix, does not attribute willfulness to any of appellant's disruptive behavior in the courtroom while he awaited the calling of his case. Nor is there evidence in the court's findings, or in the transcript of the proceedings, to indicate that the court issued any order with which appellant refused to comply. *Compare, e.g., Irby v. United States,* 342 A.2d 33, 41 (D.C.1975) (refusal to heed admonitions of the court summarily adjudicated as contemptuous).[8] Notably, there is no evidence that the court directly addressed appellant at the time of his disruptive behavior and prior to having him "stepped back."

▆▆▆▆ Viewing the evidence, as we must, in the light most favorable to the government, *Irick v. United States,* 565 A.2d 26, 30 (D.C.1989), and recognizing that the trial judge's findings cannot be disturbed unless they are shown to be without evidentiary support or plainly wrong, *Browner v. District of Columbia,* 549 A.2d 1107, 1114 (D.C.1988); D.C.Code § 17–305(a) (1989), we nevertheless conclude that there was insufficient evidence of willful conduct to justify a finding of criminal contempt in this case.[9]

### III.

Superior Court judges may punish criminal contempt summarily "if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the Court." Super.Ct.Crim.R. 42(a) (1994).[10] However, this power is "reserved for 'exceptional circumstances,'" *Harris v. United States,* 382 U.S. 162, 164, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965) (quoting *Brown v. United States,* 359 U.S. 41, 54, 79 S.Ct. 539, 548, 3 L.Ed.2d 609 (1959) (Warren, C.J., dissenting)) (quoted in *McCormick v. United States,* 635 A.2d 347, 350 (D.C.1993); *accord, Warrick v. United States,* 528 A.2d 438, 443 (D.C.1987) in which "the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court." *Cooke v. United States,* 267 U.S. 517, 534, 45 S.Ct. 390, 394, 69 L.Ed. 767 (1925) (quoted in *McCormick, supra,* 635 A.2d at 348–49).

> Rights otherwise available to criminal defendants need not be honored in such cases because the contemnor's conduct has posed such an open threat to the orderly procedure of the court, and such a flagrant defiance of the person and presence of the judge that, were it not instantly suppressed and punished, demoralization of the court's authority would follow.

*Swisher v. United States,* 572 A.2d 85, 91 (D.C.1990) (citing *Cooke, supra,* 267 U.S. at 536, 45 S.Ct. at 394).

▆▆▆▆ Even if we were to assume that the conduct the judge observed in the instant case (nodding off in the public section of the

---

lant interjected, saying, "That's not true." Again, appellant's counsel indicated that appellant should remain silent, and appellant complied. Appellant spoke a third time when he again interrupted his own counsel, stating to the judge, "Your Honor, can I just have one second?" After his counsel again indicated that appellant should remain silent, the judge addressed appellant, saying, "Sir, your lawyer is speaking." Appellant responded, "Okay, I'm sorry." In none of these instances did appellant attempt to interrupt the judge; further, in each instance when cautioned by his own counsel or by the judge to remain silent, he immediately complied.

**8.** The only order directed to appellant in this instance was the order to undergo drug testing, an order with which appellant complied without objection. *See* note 4, *supra.*

**9.** The court's finding that appellant's conduct was an affront to the court and that it interfered

with the administration of justice in his case, is relevant to the third element of contempt. *See Thompson, supra,* 454 A.2d at 1326. But, as discussed, *infra,* appellant's disruptive conduct in the public section of the courtroom was not sufficiently threatening to the court to warrant summary adjudication. Further, because the court based its finding that appellant's "condition" stopped the administration of justice in *his own* traffic case, at least in part, on evidence (the positive drug test) that was not within the court's own observation, the court could not summarily proceed to punish appellant on this ground. *See* note 11, *infra.*

**10.** When contumacious conduct is committed in the presence of the court, the contemnor may be punished summarily, "so long as the presiding judge sets out with particularity, in a written order, the bases for his finding of contempt." *Gorfkle, supra,* 444 A.2d at 939; Super.Ct.Crim.R. 42(a) (1994).

courtroom and repeatedly stumbling over other persons seated in his row) constituted criminal contempt, summary proceedings were not warranted here.[11] *See, e.g., McCormick, supra,* 635 A.2d at 349–50 (reversing summary contempt conviction of appellant, a courtroom spectator, who angrily pointed his finger at the judge as appellant left the courtroom after sentence was imposed, because conduct was insufficiently threatening to require immediate action); *Harris, supra,* 382 U.S. at 165, 86 S.Ct. at 354 (reversing summary contempt conviction where appellant refused to answer certain questions when directed to do so by the court); *see also Oliver, supra* note 11, 333 U.S. at 274–75, 68 S.Ct. at 508–09; *compare, e.g., Irby, supra,* 342 A.2d at 40–41 (affirming summary contempt conviction where appellant repeatedly interrupted court proceedings after judge's warnings); *Ellis, supra,* 264 A.2d at 305 (affirming summary contempt where litigant insulted the judge, shouted and banged his fists). While appellant's conduct is not to be condoned or excused, the disrespect he showed for the decorum of the court room, did not require instant suppression and punishment. *See McCormick, supra,* 635 A.2d at 351.[12]

## IV.

Thus, we find that appellant's actions were not contemptuous under the test set forth in

**11.** The court summarily found that appellant's "condition" on the day his case was scheduled for trial was criminally contemptuous, in that it interfered with the orderly administration of justice in his case. However, the court did not base this summary finding solely on the court's own observation of appellant. Instead, the court ordered a drug test and delayed making a determination as to whether criminal contempt had occurred until after the positive test results had been made available to the court. The court's reliance, at least in part, on evidence which was not within the court's own observation takes that portion of the contempt order that cites appellant's "condition" outside the scope of the court's summary powers. *See In re Oliver,* 333 U.S. 257, 274–75, 68 S.Ct. 499, 508–09, 92 L.Ed. 682 (1948) (in order to punish summarily the "court-disturbing misconduct must not only occur in the court's immediate presence, but [ ] the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct.... [K]nowledge acquired from the

*Thompson, supra,* 454 A.2d at 1326, and, in any event, a summary disposition was unwarranted in this instance, *see, e.g., McCormick, supra,* 635 A.2d at 350. Because appellant has already served his 30 day sentence, we order dismissal of the case as "just in the circumstances." D.C.Code § 17–306 (1989); *see McCormick, supra,* 635 A.2d at 351.

*So ordered.*

## APPENDIX

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CRIMINAL DIVISION—MISDEMEANOR BRANCH

United States of America

v.

Richard A. Bethard

T–03097–91

### *ORDER OF CONTEMPT*

Pursuant to Superior Court Criminal Rule 42(a), "criminal contempt may be punished summarily if the judge certifies that she saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." This Order of Contempt so certifies and further complies with Criminal Rule 42(a).

testimony of others, or even from the confession of the accused, would not justify convictions without a trial...." (citing *Cooke, supra,* 267 U.S. at 536, 45 S.Ct. at 394)); *cf. In re Brownlow,* 252 A.2d 903, 905–06 (D.C.1969) (reversal of summary contempt finding where court relied on outside expert's unsworn testimony in determining whether attorney was drunk). Once outside evidence is relied upon in a summary contempt proceeding an order to show cause should be issued giving the defendant notice and an opportunity to defend against the charge. *Id.* at 906.

**12.** We note that prior to resorting to summary adjudication of criminal contempt the court should have considered whether other, less drastic means, were available to accomplish the desired end. *See McCormick, supra,* 635 A.2d at 350; *Swisher, supra,* 572 A.2d at 94. *See also Harris, supra,* 382 U.S. at 165, 86 S.Ct. at 354 ("the limits of the power to punish for contempt are the least possible power adequate to the end proposed" (quotation omitted)).

On August 17, 1992, defendant was on the court's trial calendar. During proceedings in *District of Columbia v. Richard A. Bethard,* Case Number T–03097–91, the court adjudicated the defendant in summary contempt of court for the following reasons:

1. In the early hours of the morning's calendar call, the court began to observe the defendant engaging in unusual conduct. Prior to the call of his case, the court repeatedly observed the defendant "nodding out" in the audience. Defendant would "nod out" and then wake up becoming increasingly disruptive. Defendant stood up on three to four occasions and moved from his seat out of the court. While in the process of moving, defendant repeatedly stumbled and fell over other people seated in the courtroom. The court instructed the U.S. Marshall Service, on at least two occasions, to check on defendant's condition.

2. Defendant's attorney was not present in the courtroom during the defendant's initial disruptive conduct. The court instructed the court clerk to page defense counsel several times during the morning calendar. After repeated attempts to locate defense counsel and after defendant's conduct became so disruptive that the court could not carry out its normal functions, the court ordered the defendant to be "stepped back" by the U.S. Marshall Service. The court clerk was directed to make all efforts necessary to get defense counsel into the courtroom.

3. After defense counsel was located, the court called the defendant's trial matter before the court. The court read the facts regarding the defendant's behavior into the record. The court described defendant's behavior: his nodding off, his stumbling over people, his repeated motion in the courtroom, and his overall disruptive behavior. The court at that time stated that it was seriously considering holding the defendant in summary contempt. The

court stated that based on its observations, it did not feel that the defendant was in any condition to go forward with trial. The court noted that the defendant did not appear to be in any condition to be of any assistance to his counsel nor did he appear to be in any condition to even know what was going on in the courtroom. The court was forced to release the government's witnesses in the case since defendant's condition made it imprudent to proceed with the trial.

4. The court ordered the defendant to report to Pretrial Services for drug testing and continued the matter until 2:00 p.m. Neither the defendant nor defense counsel raised any objection to the testing or to the continuation of the matter. The court notes that a urine sample could not be obtained from the defendant until after 3:00 pm. The court also notes that results from Pretrial Services indicated that defendant tested positive for three different types of drugs.[1]

5. As a result of defendant's conduct, a trial date was lost in the instant case. The witnesses in the instant matter, two District of Columbia Police Officers, had to be released and the court's procedures in other matters on the trial calendar were continually disrupted.

6. The court indicated repeatedly on the record that defendant's conduct was contemptuous, that the defendant had presented himself to the court in the morning hours in a state of stupor, and that at the end of the day when the matter was brought back to the court, defendant still appeared in the same state. Defendant attempted to verbally interrupt the court throughout the afternoon proceeding. The court noted concern for defendant's appearance and demeanor throughout the day and expressed particular concern over defendant's antics in the morning hours of the court's proceedings.

7. Finally, the court found defendant's conduct and demeanor to be an affront to the court and to the administration of jus-

---

1. Defendant made representations to the court that he was in a methadone treatment program at the Mass Clinic and that an increase in his dosage of methadone was responsible for his behavior in the court. The court notes that the report from Pretrial Services indicated positive results for cocaine and for opiates.

tice. The court found that defendant's conduct was such an affront to the court that the court had to remove the defendant from the courtroom during the morning session. The court found that defendant's conduct stopped the administration of justice with respect to defendant's case.

The court's authority to hold a person in contempt is conferred upon it by 18 U.S.C. Section 402 and D.C.Code Section 11–944.

The aforementioned incidents unquestionably rose to the level of criminal contempt. The sentence imposed by the court was 30 days and was entered of record and delivered to contemnor on August 17, 1992.

In sum, given the nature of the defendant's condition, his conduct, and his demeanor in the courtroom throughout the day, it is clear that defendant's conduct was contemptuous and an affront to the court and to the administration of justice,

**THEREFORE,** it is this 19th day of August, 1992,

**ORDERED,** that the defendant be held summarily in contempt of court and sentenced to a term of 30 days.

**SO ORDERED.**

/s/ Kaye K. Christian
Kaye K. Christian
Associate Judge
(Signed in Chambers)

Copies to:

Richard A. Bethard

D.C.D.C. 227–001

Detention Facility

DC Jail

1901 D Street S.E.

Washington, DC 20003

B.R. Stockdale, Esq.

601 Pennsylvania Ave., N.W.

Suite 700

Washington, DC 20004

Mac Allen, Esq.

Office of Corporation Counsel

451 Indiana Avenue, N.W.

Room 323

Washington, DC 20010

KING, Associate Judge, concurring in the result:

I agree that the order of contempt must be reversed, but not for the reasons stated by the majority.

A brief recitation of the facts is in order. Bethard, having been charged with driving under the influence, appeared in the traffic court on the morning of April 17, 1992, for trial. The judge observed Bethard nodding off, and stumbling and falling over other people seated in the courtroom which the judge found disruptive. On two occasions the judge dispatched the deputy United States Marshal to "check on [Bethard's] condition." Efforts to locate Bethard's counsel were unsuccessful and, "after defendant's conduct became so disruptive that the court could not carry out its normal functions," the judge ordered the deputy to place Bethard in custody. See Order of Contempt at 2.

When counsel was eventually located, the judge informed counsel of Bethard's behavior and that the court was "seriously considering holding the defendant in summary contempt." *Id.* The judge also observed that Bethard

did not appear to be in any condition to be of assistance to his counsel nor did he appear to be in any condition to even know what was going on in the courtroom. The court was forced to release the government's witnesses in the case since defendant's condition made it imprudent to proceed with the trial.

*Id.* at 2–3. The judge then released Bethard, ordering him to submit to drug testing by the Pre-trial Service Agency, and to return in the afternoon after he had been tested.[1]

Bethard and his counsel again appeared before the court in the afternoon session, and the judge began by reviewing the morning

---

1. Bethard's counsel explained that his client's conduct was likely a reaction to a new dosage of methadone he was taking. That may be so, but the drug test revealed the presence of cocaine and opiates in addition to methadone.

events. Thereafter, a colloquy ensued, involving the court and counsel, concerning Bethard's drug problems, culminating in the judge's announcement that she found Bethard to be in summary contempt. During this colloquy, on two occasions, while his attorney was speaking, Bethard asked to be heard, but was shushed by his counsel. On another occasion, after the prosecutor stated Bethard had been unable to go to trial on a previous court date, Bethard remarked, "That's not true." As noted, at the conclusion of the hearing, the judge found Bethard to be in summary contempt and, after giving Bethard an opportunity to allocute, imposed a thirty-day sentence.

In her Order of Contempt, the judge based her finding on three separate grounds: (1) Bethard's disruptive behavior in the morning session, (2) his inability to go to trial, and (3) his state of stupor after lunch, and his attempts "to verbally interrupt the court through the afternoon proceeding." See Order of Contempt at 4. The judge concluded: "given the nature of the defendant's condition, his conduct and his demeanor in the courtroom throughout the day, it is clear that defendant's conduct was contemptuous."

The circumstances presented here are an all too common example of the difficulties encountered by trial judges faced with heavy case loads and disruptive, uncooperative participants in our busy trial courts. The case also demonstrates the many pitfalls facing a trial judge who attempts to use the summary contempt power to maintain order in the courtroom. This court, concerned that the summary contempt power not be misused, has imposed strict requirements on its exercise, which are intended to ensure that the contempt sanction is used sparingly. The majority has cited most of our cases dealing with summary contempt, and I will not repeat them here. Suffice to say that a trial judge imposing summary contempt must carefully dot every "i" and cross every "t" to ensure that his or her actions will be sustained by this court. Here, the judge repeated the error made by two of her colleagues in recent summary contempt cases we have decided. See, In re L.G., 639 A.2d

603 (D.C.1994); In re Kraut, 580 A.2d 1305 (D.C.1990).

In both L.G. and Kraut, the trial court imposed summary contempt based on three separate incidents or grounds. In both cases we concluded that at least one of the grounds relied upon was unsupported by the record and, because the trial judge had not ruled that each incident standing alone was sufficient to constitute contempt, the summary contempt finding based on all three incidents could not stand. In short, the trial judges in those two cases considered the three incidents together as a single count of contempt, i.e., a "critical mass" of contemptuous behavior. L.G., supra, 639 A.2d at 607. Since all three incidents were not supportable, the entire mass fell. The same is true here.

I have no doubt that Bethard's conduct in the morning session, i.e., the first incident, was sufficient to support a finding of summary contempt. Bethard left his seat on a number of occasions, stumbling over himself and others, and the deputy United States Marshal was twice dispatched to restore order. Eventually Bethard's movements about the courtroom became such an intrusion that, in order to restore order, the judge had him placed in custody. Summary contempt is sometimes the only tool available to the trial judge "to preserve order in the courtroom for the proper conduct of business.... On such occasions the court must act instantly to suppress disturbance." McCormick v. United States, 635 A.2d 347, 348 (D.C.1993) (citation omitted). On these facts the judge could have found Bethard's conduct willful, and it would have been well within the proper exercise of judicial power for the judge to have then found Bethard in summary contempt on that basis. See Swisher v. United States, 572 A.2d 85, 87–88 (D.C.1990); see, Matter of Thompson, 454 A.2d 1324, 1327 (D.C.1982) (persistent conduct rises to level of "willful obstruction of the orderly administration of justice"); Matter of Schaeffer, 370 A.2d 1362, 1364 (D.C.1977) (willfulness may be inferred from conduct). Commendably, the judge chose to await the arrival of counsel before taking any formal action.

After counsel finally appeared, the judge elected to proceed cautiously and determine

more about Bethard's condition. She did conclude, however, that Bethard was in no condition to proceed to trial; that determination was not disputed by trial counsel and has not been challenged in this court. Bethard's inability to proceed to trial served as the second ground for the contempt citation. Outright failure to appear for trial can constitute contempt, *Campbell v. United States,* 295 A.2d 498, 500 n. 8 (D.C.1972); *Swisher, supra,* 572 A.2d at 89 ("defendant's unexcused failure to appear for trial on the scheduled date caused an obstruction of the orderly administration of justice"), however, we have never been asked to consider whether a litigant, who appears in court unable to proceed because he is under the influence of alcohol[2] or some drug, is subject to summary contempt.[3] This question does not need to be answered at this time because, in my view, there is a failure of proof on the third ground, i.e., Bethard's claimed interruption in the afternoon session that assertedly disrupted the proceeding.

As noted, the third incident of contempt was Bethard's state of stupor and his attempts "to verbally interrupt the court through the afternoon proceeding." There is no record support for a finding of contempt on those grounds. The judge did not describe the "stupor" or how it might have constituted "disruptive conduct" that would permit a finding of summary contempt. The same is true of the three remarks made by Bethard. The judge found that the comments "interrupt[ed] the court[4] through the afternoon proceeding," but that is not borne out by the record. Twice Bethard spoke while his own attorney, not the judge, was speaking; on the third occasion Bethard's remark was in response to a comment by the prosecutor. There is simply no indication that these remarks rose to the level of "disruptive conduct" supporting a contempt finding. Significantly, after the third, and last, comment, Bethard was admonished by the judge ("Sir, your lawyer is speaking"); Bethard apologized and did not speak again until the judge invited him to do so in the way of allocution. On this record, there could be no finding of contempt due to Bethard's conduct during the afternoon session. Therefore, since the judge relied on three separate and dependent grounds, and proof was lacking as to one of those grounds, I must conclude that the contempt citation cannot stand. *See L.G., supra,* 639 A.2d at 607; *Kraut, supra,* 580 A.2d at 1313–14. For that reason I concur with the court's decision to reverse the conviction.

---

2.  At least one court has observed that if a defendant is under the influence of alcohol to the extent that state interferes with or disrupts the orderly process of the court, that would be contemptuous. *Com. Ex Rel. Falwell v. Di Giacinto,* 324 Pa.Super. 200, 471 A.2d 533, 537 (1984).

3.  Whether or not summary contempt would lie under those circumstances is an open question. If, however, the defendant's release order directed that he return to court in a condition to participate in his defense, a failure to do so might be contempt as a violation of a court order. *Swisher, supra,* 572 A.2d at 89.

4.  It is absolutely clear from the record that when the trial judge referred to "the court," she was referring to herself in her individual judicial capacity, rather than the court as a body.