**In re James DIXON, Jr., Appellant.**

**No. 99–FM–1590.**

District of Columbia Court of Appeals.

Argued Oct. 22, 2002.

Decided July 15, 2004.

---

William Douglas Loeffler, appointed by the court, for appellant.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel at the time the brief was filed, and Rosalyn Calbert Groce, Supervisory Corporation Counsel, were on the brief, for the District of Columbia.*

Before TERRY, FARRELL, and RUIZ, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted, after an evidentiary hearing, of one count of criminal

---

* While this appeal was pending, the title of the District's chief attorney was changed. The Corporation Counsel is now officially known as the Attorney General for the District of Columbia. *See* Mayor's Order No. 2004–92 (May 26, 2004), 51 D.C. Register 6052.

contempt. On appeal he contests the sufficiency of the evidence against him and argues that certain hearsay evidence was erroneously admitted. He also maintains that the trial court did not properly exercise its discretion in finding him guilty of only one count. We reject all of these arguments and affirm appellant's conviction.

## I

On July 23, 1999, the Superior Court issued a civil protection order ("CPO") against appellant which barred him from all contact with Ms. Malvena West for a period of twelve months. Appellant and Ms. West had known each other for about a year and a half and were the parents of a young daughter. The CPO was issued in response to actual and continuing threats of violence against Ms. West, her family, and their infant child. It required appellant not to have any contact with Ms. West and specifically prohibited telephone contact. Appellant was personally served in open court with a copy of the CPO on July 23, the day it was issued.

Barely ten days later, on August 2, Ms. West filed a motion to hold appellant in criminal contempt after he telephoned her in violation of the CPO. In her motion, Ms. West alleged that appellant called her on July 25 and again on July 31, and that on each occasion she hung up the phone after she realized who was calling. Later, on September 15, Ms. West filed an amended motion for contempt in which she stated that appellant called her sixteen times on eight different days between August 23 and September 1.

At the hearing on the contempt motion, Ms. West testified about the unwelcome telephone calls from appellant. She stated—over objection—that during two of those calls she told appellant he should not call her any more because such calls were in violation of the CPO. In total, she re-called having received calls from appellant eighteen times after the CPO was issued, although on a few occasions she had to have her memory refreshed in order to remember the exact dates of the calls.

Ms. West was the only witness. After she testified and various documents (including telephone company records reflecting some of the calls) were admitted into evidence, defense counsel unsuccessfully moved for a judgment of acquittal. Appellant did not take the stand and presented no evidence.

Despite counsel's attempts in closing argument to persuade the court that appellant never understood the terms of the CPO, the court found him guilty of "the offense of criminal contempt." The court based its finding on undisputed evidence that appellant "willfully violated the [CPO]" by calling Ms. West on several occasions. Furthermore, given that appellant had been personally served with a copy of the CPO, the court found that appellant knew it was a violation to call Ms. West, noting that Ms. West specifically told him not to call her because it was a violation.

Finally, the court stated that it was "only considering, for purposes of this hearing, one contempt violation." After noting appellant's "extensive criminal history," the court sentenced him to six months in jail.

## II

Historically, trial judges have had the power to punish individuals for contempt of court in order to maintain an orderly system of justice. *See Bloom v. Illinois,* 391 U.S. 194, 202–206, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Ex Parte Terry,* 128 U.S. 289, 303, 9 S.Ct. 77, 32 L.Ed. 405 (1888). This power has been held to be " 'inherent in the nature and constitution of a court' ... arising from

the need to enforce compliance with the administration of the law." *Brooks v. United States,* 686 A.2d 214, 220 (D.C. 1996) (citation omitted). Criminal contempt consists of a contemptuous act accompanied by a wrongful state of mind, both of which must be proved beyond a reasonable doubt, whereas civil contempt is more remedial in nature and requires no finding of intent. *In re Gorfkle,* 444 A.2d 934, 939–940 (D.C.1982). To be convicted of criminal contempt, a defendant "must engage in either willful disobedience of a court order causing an obstruction of justice ... or contemptuous conduct committed in the presence of the court." *Brooks,* 686 A.2d at 223 (citations omitted); *see* D.C.Code § 11–944 (2001).

■ In this case, appellant asserts prejudice in the trial court's failure to identify which one of his eighteen violations of the CPO gave rise to his single conviction of criminal contempt. He claims that not knowing which specific act was the basis of his conviction placed him in an "untenable situation." This argument overlooks the fact that a trial court has the authority to reduce a series of contemptuous actions to a single instance of contempt, so long as each episode is supported by substantial evidence. *See, e.g., In re L.G.,* 639 A.2d 603, 606–607 (D.C.1994); *In re Kraut,* 580 A.2d 1305, 1312 (D.C.1990); *In re Gorfkle,* 444 A.2d at 939–940. Only when a court finds that a defendant's actions cumulatively, but not individually, rose to a level of contempt will it be appropriate for this court to reverse a contempt conviction. *See In re L.G.,* 639 A.2d at 607; *In re Kraut,* 580 A.2d at 1313–1314. That did not occur in this case.

The trial court found that appellant had committed eighteen separate contemptu-

ous acts, each of which was proven independently of the others by Ms. West's testimony. Appellant's actions did not collectively give rise to a single charge of criminal contempt, but separately constituted eighteen independent violations. The fact that the court found appellant guilty of only one count of contempt actually did him a service, since the court could have considered each telephone call as a separate instance of contempt, thereby increasing considerably appellant's exposure to criminal punishment. On the record before us, we find no prejudice and therefore no ground for reversal.

### III

Appellant maintains that there was no evidence presented in his contempt hearing to show that he understood the "ramifications" of the CPO, "except for hearsay statements by [Ms. West]." He also claims that Ms. West's supposed hearsay testimony regarding his awareness was improperly admitted. Both of these arguments are without merit.

■ With respect to appellant's first contention, the evidence showed that appellant was handed a copy of the CPO by the courtroom clerk in open court on July 23. The text of the document specifically and plainly prohibited contact with Ms. West,[1] and there was no indication that appellant had any difficulty in understanding what it said. The trial court was correct when it ruled that the government was not required "to put on direct evidence that he understands the English language to meet that requirement"—*i.e.,* the requirement that he "not contact [Ms. West] ... by telephone." To argue that appellant did not understand the implications of the CPO when he was personally

---

**1.** The CPO, which is in the record, states in part that appellant "shall not contact [Ms. West] in any manner, including but not limit-ed to: *by telephone;* in writing; in any other manner, either directly or indirectly through a third party" (emphasis added).

served with a copy of it is, on this record, essentially frivolous.

Appellant's other contention, that hearsay evidence was erroneously admitted against him, is equally unavailing. The evidence established that on ten separate dates appellant called Ms. West eighteen different times. During at least two of these calls, Ms. West specifically told appellant that he was violating the CPO. Defense counsel objected to this testimony as hearsay, but the court correctly overruled his objection.

 Hearsay is a statement, other than one made by the declarant while testifying at a trial, offered to prove the truth of the matter asserted. *See, e.g., In re D.S.,* 747 A.2d 1182, 1187 (D.C.2000). However, "[i]t is fundamental that an out-of-court statement is not hearsay if it is offered for a purpose other than to prove the truth of the matter asserted." *Perritt v. United States,* 640 A.2d 702, 704 (D.C. 1994). In this case the government elicited Ms. West's testimony not to prove that appellant violated the CPO, but to show that he was aware of its existence and its requirements. The court acknowledged this in its decision by noting that Ms. West's testimony was "clearly relevant on [the] issue of his knowledge that he knew not to contact [her]." Furthermore, this court has routinely recognized out-of-court statements as non-hearsay when they are used to show the effect on the listener and not to prove their truth. *See, e.g., Goldsberry v. United States,* 598 A.2d 376, 380 (D.C.1991) (notice advising appellant of time and place of trial, signed by appellant and witnessed by clerk, was admissible to show that appellant had notice of court appearance); *Jenkins v. United States,* 415 A.2d 545, 547 (D.C.1980) (statement of court clerk that appellant's case had been dismissed was admissible to show the reason for his belief that he did not have to appear at trial).

We therefore find no error in the court's admission of Ms. West's statements to appellant that he should stop calling her because they showed that appellant had notice that his conduct was violative of the CPO. Moreover, even if that testimony were excluded, there was sufficient other evidence of appellant's knowledge of the CPO (the clerk's hand delivery in open court) and his willful violation of it (eighteen separate calls) to support his conviction.

## IV

For these reasons, appellant's conviction of contempt is

*Affirmed.*