Xavier McCORMICK, Appellant,

v.

UNITED STATES, Appellee.

No. 92–SP–1329.

District of Columbia Court of Appeals.

Argued Nov. 16, 1993.
Decided Dec. 27, 1993.

Joseph C. Metcalfe, with whom Mary C. Kennedy and John M. Copacino, Georgetown University Law Center Criminal Justice Clinic, were on the briefs, for appellant.

Barbara A. Grewe, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher and Thomas C. Black, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN and WAGNER, Associate Judges, and NEWMAN, Senior Judge.

FERREN, Associate Judge:

Judge Walton summarily convicted appellant of criminal contempt under Super.Ct.Crim.R. 42(a) (1993) for angrily pointing his finger at the judge as appellant left the courtroom after witnessing a sentencing of a friend or relative. The judge sentenced appellant to 90 days in jail. Appellant contends that, because the summary conviction and sentencing under Rule 42(a) were not immediately necessary to vindicate the trial court's authority, the judge violated appellant's constitutional right to due process. In addition, appellant contends that the judge's failure to recuse himself violated appellant's right to a fair and impartial tribunal. We agree with appellant that, by conducting a

summary contempt proceeding under the circumstances presented here, the judge violated appellant's constitutional right to due process. The judge should have proceeded, if at all, under the nonsummary contempt procedures of Super.Ct.Crim.R. 42(b), affording appellant notice of the charges, a reasonable time to prepare the defense, and a hearing. Accordingly, because appellant has already served his 90 day sentence, we reverse appellant's contempt conviction and order the proceedings dismissed as "just in the circumstances." D.C.Code § 17–306 (1989).[1]

### I.

On September 24, 1992, appellant attended the sentencing of Damanual Quarles before Judge Walton. According to the Contempt Citation, after the judge had announced Quarles' sentence, appellant "became obviously upset" and "stormed to the inner courtroom doors with two friends in apparent anger." Appellant "flung" open the doors, "angrily said something to his friends," "turned back to the bench," and pointed at the judge. Appellant's "friends then tried to pull him from the courtroom and finally succeeded in getting him to leave."

The deputy United States Marshal assigned to the judge's courtroom, a member of the courthouse security force, returned appellant to the courtroom. The court then conducted the following summary contempt hearing:

THE COURT: Young man, what is your name?

MR. McCORMICK: My name is Xavier McCormick, sir.

THE COURT: Sir, why did you go outside of that door and turn back around and look at me and point at me? Do you have a problem with the sentence I imposed?

MR. McCORMICK: No, Your Honor.

THE COURT: Yes, you did, sir. And you're not going to come into my courtroom and try and intimidate anybody. Number one, you did not intimidate no-

body. Nobody is afraid of you in this courtroom.

MR. McCORMICK: Excuse me, may I speak?

THE COURT: No. You went out there, and you opened the door, and you looked back, and you pointed your finger at me. I saw you.

MR. McCORMICK: Your Honor, I waved my hand. I did not point.

THE COURT: You had no right to do that. But I saw you point your finger at me.

MR. McCORMICK: Your Honor, I did not point. I'm serious, I did not point.

THE COURT: You pointed your finger at me. I saw you. I have no reason to make anything up. I saw you push both doors open, point your finger at me, and start going off with your boys like you're bad or something.

MR. McCORMICK: Your Honor, I was—

THE COURT: You are held in contempt of court, and I sentence you to 90 days in jail for that conduct that you engaged in.

### II.

Pursuant to D.C.Code § 11–944(a) (1993 Supp.), Superior Court judges "may punish for disobedience of an order or for contempt committed in the presence of the court." Super.Ct.Crim.R. 42(a) specifies when criminal contempt may be punished summarily:

*Summary disposition.* A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the Court.

Summary action to vindicate the court's authority and preserve its dignity is sometimes necessary "[t]o preserve order in the court room for the proper conduct of business." *Cooke v. United States,* 267 U.S. 517, 534, 45 S.Ct. 390, 394, 69 L.Ed. 767 (1925). On such occasions, "the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when

---

1. In view of our disposition, we need not address appellant's contention that the judge should have recused himself. That contention presupposes a

remand under Super.Ct.Crim.R. 42(b), which we do not order here.

occurring in open court." *Id.* Summary contempt proceedings, therefore, are an undoubtedly important means of maintaining courtroom order.

The unique nature of summary criminal proceedings, however, makes it imperative that the trial judge not ignore the accused's minimal rights to due process appropriate to the circumstances. Although due process rights are significantly compromised by summary contempt proceedings, some traditional rights are never surrendered; for example, in a summary contempt proceeding, "reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are 'basic in our system of jurisprudence,'" especially when one's liberty is at stake. *Taylor v. Hayes,* 418 U.S. 488, 498, 94 S.Ct. 2697, 2702, 41 L.Ed.2d 897 (1974) (quoting *Groppi v. Leslie,* 404 U.S. 496, 502, 92 S.Ct. 582, 586, 30 L.Ed.2d 632 (1972)). Thus, "[e]ven where summary punishment for contempt is imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right to allocution.'" *Id.* (quoting *Groppi,* 404 U.S. at 504, 92 S.Ct. at 587). These due process rights are especially significant in a summary contempt proceeding because the trial judge acts in several, inherently conflicting roles: presider, prosecutor, principal witness, and fact-finder.

■ Even if we assume that appellant's conduct warranted a summary Rule 42(a) proceeding—more later on that—the judge never told appellant he was charged with criminal contempt. *See Swisher v. United States,* 572 A.2d 85, 92–93 (D.C.1990) (per curiam) (in summary contempt proceeding based on failure to appear, accused entitled among other things to notice he is charged with criminal contempt); *Hopkins v. United States,* 595 A.2d 995, 998 (D.C.1991) (Schwelb, J., concurring) (jurors who returned late from break during trial were improperly held summarily in contempt without being told they were charged with criminal contempt and had other rights incident to criminal process); *see also* I ABA Standards for Criminal Justice § 6–4.4 (2d ed. 1980).

Even more significantly, the judge failed to grant appellant his request to be heard. *See*

*Taylor,* 418 U.S. at 498, 94 S.Ct. at 2703; *Groppi,* 404 U.S. at 504, 92 S.Ct. at 587. Appellant remained respectful of the court throughout the proceeding, responding to the judge as "sir" and "Your Honor." But, when he asked for the opportunity to "speak"—to explain his actions—the trial court said, "No."

All told, the trial judge's super-summary treatment denied appellant due process. As the Supreme Court stated in *Taylor:*

> These procedures[, notice of the charge and the right to be heard,] are essential in view of the heightened potential for abuse posed by the contempt power. The provision of fundamental due process protections for contemnors accords with our historic notions of elementary fairness. While we have no desire to imprison the discretion of judges within rigid mechanical rules, we remain unpersuaded that the additional time and expense possibly involved will seriously handicap the effective functioning of the courts. Due process cannot be measured in minutes and hours or dollars and cents. For the accused contemnor facing a jail sentence, his liberty is valuable and must be seen as within the protection of the [due process clause]. Its termination calls for some orderly process, however informal.

418 U.S. at 500, 94 S.Ct. at 2704 (citations and internal quotation marks omitted).

There were other defects in the proceeding. The judge did not explore alternatives to summarily holding appellant in contempt, such as a nonsummary contempt proceeding under Super.Ct.Crim.R. 42(b) in which appellant could have counsel and prepare a defense. *See Swisher,* 572 A.2d at 94 (when no pressing circumstances appear to compel immediate disposition of contempt case, judge should explore alternatives short of summary adjudication of contempt). Nor did the judge consider mitigating circumstances. He ordered appellant to prison for 90 days after a hearing that apparently lasted, at most, two minutes. Although appellant had no prior criminal record and was gainfully employed with two different jobs, the judge did not consider ordering work release so that appellant could continue working to support

his family. *See id.* at 93 (in reversing summary contempt conviction, court noted defendant had no prior criminal record, was gainfully employed, and trial judge gave no consideration of work release or "weekend" type sentence).[2]

We conclude, therefore, that the judge erred by not informing appellant of the nature of the proceeding against him, by not permitting appellant to speak on his own behalf, and by not exploring alternatives to summarily holding appellant in contempt. *See Taylor,* 418 U.S. at 498, 94 S.Ct. at 2703; *Swisher,* 572 A.2d at 92–94.

### III.

▇ In any event, we conclude that the trial judge erred in proceeding under Rule 42(a) because that part of the rule is inapplicable to the circumstances here. If the judge wanted to pursue contempt, he was obliged under the circumstances to convene a nonsummary proceeding based on notice and a hearing under Super.Ct.Crim.R. 42(b).[3]

Although Rule 42(a) announces only two express requirements—that "the judge saw or heard the conduct constituting the contempt" and that the conduct "was committed in the actual presence of the Court"—the Supreme Court has stressed that "Rule 42(a) is reserved for 'exceptional circumstances.'" *Harris v. United States,* 382 U.S. 162, 164, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965) (quoting *Brown v. United States,* 359 U.S. 41, 54, 79 S.Ct. 539, 548–49, 3 L.Ed.2d 609 (1959) (Warren, C.J., dissenting)). Accordingly, the Supreme Court has added an important gloss on the rule tantamount to a third requirement: the conduct must have been so outrageous and disruptive that the "necessities of the administration of justice" required immediate action. *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11

(1954); *see Swisher,* 572 A.2d at 96 (Schwelb, J., concurring).

In *Cooke,* the Supreme Court explained the rationale underlying summary contempt substantially in terms of this third, but fundamental requirement: "[U]nless such an open threat to the orderly procedure of the court and such a flagrant defiance of the person and the presence of the judge before the public ... is not instantly suppressed and punished, demoralization of the court's authority will follow." 267 U.S. at 536, 45 S.Ct. at 395. Here, the trial judge's use of Rule 42(a) was not warranted because, for all we can tell from the record, a summary proceeding was not necessary to maintain order in the courtroom and to preserve the court's dignity. The sentencing was over and appellant had left the courtroom by the time the judge acted; there was no ongoing proceeding to be interrupted. The "necessities of the administration of justice," *see Offutt,* 348 U.S. at 14, 75 S.Ct. at 13, and "demoralization of the court's authority," *see Cooke,* 267 U.S. at 536, 45 S.Ct. at 395, did not require immediate action.

Furthermore, a disposition under Rule 42(b) was required not only because there was no disruption requiring immediate action but also because there was a factual dispute as to what actually had occurred. The trial court said: "You pointed your finger at me." Appellant replied: "Your Honor, I waved my hand. I did not point." In the usual summary contempt proceeding, there is no dispute about what happened; there is merely disagreement as to what the action meant or how it should be punished. *See, e.g., Ex Parte Terry,* 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888) (defendant assaulted marshal); *In re Ellis,* 264 A.2d 300 (D.C.1970) (defendant shouted and banged his fist). In this case, however, appellant—to the extent he was allowed to say anything—contested

2. Appellant filed a motion to reduce sentence on October 1, 1992. After a hearing, the judge granted appellant releases for work and for visiting his four-year-old daughter.

3. Super.Ct.Crim.R. 42(b) provides:
   *Disposition upon notice and hearing.* A criminal contempt except as provided in paragraph (a) of this Rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such.... If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent.

the trial court's basic assertion that appellant had pointed at the judge from the back of the courtroom. We therefore cannot tell from this record whose perception of what happened was correct. Because other persons apparently witnessed the event, a Rule 42(b) proceeding would have given appellant the opportunity to call these witnesses on his own behalf.

> When there are facts which bear on guilt or innocence, or on the degree of culpability, which the judge cannot ascertain through his or her own senses, the contemnor must be afforded a reasonable opportunity to explain ... and, if found guilty, to present facts in mitigation. To this end, certain basic rights must be respected unless there is an emergency so extreme as to render this impracticable.

*Swisher*, 572 A.2d at 92.

Finally, even if we assume that the judge's finding was correct—*i.e.*, that appellant had not merely "waved [his] hand," as he claimed, but had "pointed [his] finger" at the judge in anger from the back of the courtroom—appellant's action was "ambiguous;" we cannot tell whether that action "was indeed threatening or sinister." *Warrick v. United States*, 528 A.2d 438, 443–44 (D.C.1987). Appellant did not shout or verbally insult the judge. *See Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). Nor did he repeatedly interrupt court proceedings. *See Codispoti*, 418 U.S. at 507–08 n. 1, 94 S.Ct. at 2689 n. 1; *Irby v. United States*, 342 A.2d 33, 40–41 (D.C.1975).

The judge told appellant in open court: "[Y]ou did not intimidate nobody. Nobody is afraid of you in this court room." On the other hand, in the "Contempt Citation" subsequently entered, the judge wrote that appellant's conduct "posed a direct threat to the court's ability to conduct its proceedings in an orderly manner." However the judge actually may have felt, we cannot tell from this record whether he reasonably could have found that appellant's conduct "was indeed threatening or sinister," *Warrick*, 528 A.2d at 444. The situation was ambiguous. Appellant could have been indicating to the judge, "I'm going to get you!" Or he could have

been indicating, "You gave too harsh—or too lenient—a sentence; I hope I never see you again!" Moreover, appellant did nothing more; he immediately left the courtroom. Accordingly, there was not the "flagrant defiance," *Cooke*, 267 U.S. at 536, 45 S.Ct. at 395, or "exceptional circumstance," *Harris*, 382 U.S. at 164, 86 S.Ct. at 354, required to justify a summary contempt proceeding. *See Warrick*, 528 A.2d at 443 (defendant's statement to judge that "[t]he day will come for your judgment" was "in no way disruptive of the proceedings, which, to all intents and purposes, had already ended;" statement was an isolated, ambiguous comment rather than "repeated contemptuous and disrespectful conduct in the face of warnings by the court").

We do not say there can never be a single, non-verbal gesture that would justify a summary contempt proceeding. Nor must conduct evincing "flagrant disrespect for the court," *In re Schwartz*, 391 A.2d 278, 282 (D.C.1982), be menacing or threaten bodily harm in order to be contumacious—although, as indicated previously, we think it must have at least some capacity to impair the orderly administration of justice. But in this instance, appellant's angry gesture, for all we can tell from the judge's own description, was ambiguous and thus required the elucidation that an adversarial hearing would have provided.

In sum, appellant's action did not create an extreme emergency in the courtroom that warranted summary disposition to maintain order, vindicate the court's authority, or preserve the court's dignity. We therefore conclude that the trial court erred by summarily holding appellant in contempt, and thus we reverse appellant's conviction. Furthermore, although we could remand to the trial court for a Rule 42(b) proceeding, we conclude that it is "just in the circumstances" to order dismissal of the case because appellant already has served his 90 day sentence. D.C.Code § 17–306; *see Thompson v. Thompson*, 559 A.2d 311, 315 n. 8 (D.C.1989).

*So ordered.*