**In re Stanley VANCE, Appellant.**

No. 95–FM–1669.

District of Columbia Court of Appeals.

Submitted June 4, 1997.

Decided June 26, 1997.

Mack E. Davis, appointed by the court, for appellant.

Jo Ann Robinson, Interim Corporation Counsel, Robert R. Rigsby, Deputy Corpora-tion Counsel, Rosalyn Calbert Groce, Di-rector, Policy and Appeals Branch, Office of the Corporation Counsel, and Sidney R. Bix-ler, Assistant Corporation Counsel, for appel-lee.

Before FERREN and STEADMAN, Associate Judges, and BELSON, Senior Judge.

FERREN, Associate Judge:

Stanley Vance appeals from an adjudica-tion of summary contempt arising out of his conduct during a hearing before Judge Christian on August 9 and 10, 1995. On appeal, Vance argues that his conduct did not rise to the level of willfulness required to sustain a summary contempt judgment. Vance further argues that Judge Christian abused her discretion by ordering him incar-cerated pending preparation of a presentenc-ing report requested by Vance's trial counsel. We affirm.

## I.

On October 20, 1994, Isabell Fernandez sought and received a temporary civil protec-tion order (CPO) protecting her from Vance, the father of her three children. After a hearing on November 3, 1994, Judge Wer-theim issued a general CPO ordering Vance to stay away from Fernandez for twelve months. On July 6, 1995, Fernandez filed a petition to hold Vance in contempt for violat-ing the CPO, alleging that Vance had persist-ed in contacting her and their children in violation of the order, had ultimately per-suaded her via intimidation to resume cohabi-tation, and had then continued to abuse her and the children until she fled. Fernandez maintained that after she fled Vance had persisted in visiting her at her place of em-ployment, where he continued to threaten her.

A hearing on these allegations before Judge Christian began on August 9, 1995. During the testimony of Ms. Fernandez, Vance began to gesture and use other body language in a fashion the court found intimi-dating to the witness. The court admonished Vance, who apologized profusely—in fact in-terrupting the court throughout its admoni-

tion. For scheduling reasons, counsel for Vance did not complete his cross-examination of Fernandez and the hearing was scheduled to resume the next day. When Fernandez was recalled a day later to complete cross-examination, the court observed Vance making inappropriate gestures. The court again admonished Vance, warning him of the possibility of contempt sanctions. Vance continued to interrupt the trial court with a stream of apologies throughout the court's admonishment, even after the trial court ordered Vance to remain silent.

The next set of incidents occurred when Vance took the stand against advice of counsel. Vance refused to take the oath on religious grounds. When the clerk and the court attempted to explain that an alternative oath existed, Vance continued to interrupt their explanations by repeating "I don't swear." Ultimately, however, Vance was sworn and took the stand. During his testimony Vance gave non-responsive answers and, on cross-examination, engaged in a diatribe regarding acts of racism against him personally and against black people everywhere. Another incident occurred when a person known to Vance entered the court just after Vance had taken the stand. Vance broke off his testimony to say "that's my witness." When the court attempted to ask Vance's attorney whether the person who had just entered was, in fact, a witness, Vance interrupted and repeated that he was. When the court admonished Vance not to speak out of turn, Vance again interrupted the court with a stream of apologies.

Finally, during cross-examination, Vance was asked if he had ever sold drugs. Vance's attorney objected, and the court began to rule. Vance, however, interrupted the trial court to thank her for sustaining the objection. At that point, the trial court found that Vance's conduct had substantially impeded the efficient administration of justice and held him summarily in criminal contempt. Vance's attorney requested a pre-sentencing report. The court agreed—setting a date for sentencing more than a month later—but ordered Vance held without bond until sen-

tencing. Throughout these proceedings, Vance continued to interrupt.

On August 11, Judge Christian entered an order of contempt setting forth the above stated facts. The Judge concluded that Vance willfully had violated the court's order to behave in an appropriate manner and thereby seriously had impeded the ability of the court to function in an expeditious manner. On September 14, Judge Christian sentenced Vance to sixty-five days in prison for contempt of court, giving credit for time served. On September 19, the hearing on Fernandez's CPO petition resumed. After the hearing, the trial court found that Vance had violated the CPO and sentenced him to prison for 180 days (consecutive to the contempt sentence).[1]

## II.

On appeal of a finding of criminal contempt, we must view the evidence in the light most favorable to sustaining the judgment. *See Bethard v. District of Columbia,* 650 A.2d 651, 654 (D.C.1994) (per curiam). We may not disturb the trial court findings unless they are "without evidentiary support or plainly wrong." *Id.* The elements of criminal contempt are "willful disobedience" of a court order and, as a result, "causing an obstruction of the orderly administration of justice." *In re Kraut,* 580 A.2d 1305, 1312 (D.C.1990) (internal quotation marks omitted). These elements must be proved beyond a reasonable doubt. *See id.*

Vance challenges the finding of willfulness. He argues that the gestures he made were not threatening or designed to intimidate the witness but were merely the natural consequences of a stressful and unpleasant proceeding. He further argues that, as his words show, he did not intend to be rude or to show any disrespect. Rather, they were merely an anxious—albeit inappropriate—attempt to apologize after accidentally offending the trial court.

"[W]rongful intent is a state of mind, and in most cases it cannot be proved directly." *(Mark) Thompson v. United*

---

1. Vance does not appeal his 180–day sentence for contempt based on his violation of the CPO.

*States,* 690 A.2d 479, 483 (D.C.1997). Whether Vance's gestures were intimidating or not was for the trial judge, who observed his demeanor and the effect of his gestures on the witness giving testimony, to decide. *See In re S.G.,* 581 A.2d 771, 774–75 (D.C.1990). Similarly, the trial court could conclude, despite Vance's apologetic words, that Vance's repeated interruptions and digressions evidenced a willingness to proceed with his own agenda no matter what the court instructed or required. *See, e.g., In re (W.Edward) Thompson,* 454 A.2d 1324, 1327 (D.C.1982) (per curiam) (concluding that persistent violation of court's instructions regarding improper line of questioning and argument rose "to the level of willful obstruction of the orderly administration of justice" (internal quotation marks omitted)); *Irby v. United States,* 342 A.2d 33, 41 (D.C.1975) (concluding that repeated interruptions and speaking out of turn supported finding of criminal contempt).

Vance argues, however, that this case is similar to *Bethard.* There, defendant arrived early for his traffic court adjudication and took a seat in the courtroom. *See Bethard,* 650 A.2d at 652. While sitting in the public section, Bethard "nod[ded] out" several times and—on three or four occasions—left and returned to his seat, stumbling over other people as he exited and re-entered his row. *Id.* (internal quotation marks omitted). The trial court found that this behavior made it impossible for the court to conduct business in an orderly fashion and ordered Bethard "stepped back." *See id.* On appeal, we concluded that the evidence did not support a finding of willfulness, *see id.* at 654, and that Bethard's behavior, while not to be condoned, "did not require instant suppression and punishment," *id.* at 655. Vance maintains that his own apologies and nervous gestures fall into the same category of behavior—inappropriate, but not in need of instant suppression and punishment.

*Bethard* is distinguishable in several ways. In *Bethard,* we noted that the trial court's written order made no finding of willfulness and that the court had not issued an order or warning which Bethard then had disobeyed. *See id.* at 653–54. Here, in contrast, the trial court repeatedly warned Vance that his conduct was inappropriate and ordered him to refrain from further like conduct. Furthermore, the trial court's written order noted Vance's "repeated interruptions ... after the Court had warned him and after he acknowledged her warnings," and the order explicitly found his behavior "contemptuous." In addition, Bethard's conduct occurred in the course of a single morning and during proceedings in which Bethard was a mere spectator, whereas Vance's behavior continued over the course of his own two-day trial. Finally, while Bethard's behavior was merely disrespectful, the trial court found that Vance had attempted to intimidate a key government witness while that witness testified, and that Vance had repeated this behavior despite the trial court's explicit order to the contrary. We therefore conclude that the record supports the trial court's ruling that Vance's behavior went beyond that which is merely "not to be condoned or excused" and in fact did "require instant suppression and punishment." *Id.* at 655.

Vance next argues that the trial court stated in its written order that his conduct had been "an obstruction to the orderly administration of justice with respect to his own case on at least three occasions." Vance maintains that because the trial court did not state which three of the enumerated instances of improper conduct—contained in sixteen numbered paragraphs of the court's order—were the actual causes of his contempt, he cannot be found guilty if any three of the enumerated incidents falls short of the necessary elements of contempt. *See Kraut,* 580 A.2d at 1313–14 (concluding that where trial court listed three specific grounds for finding of contempt, and record failed to support one listed ground, this court would not presume other two grounds—even if legally sufficient—would have caused trial court to find defendant in contempt); *see also (Mark) Thompson,* 690 A.2d at 484 (holding that where trial court limited itself to discussion of single incident, appellant's history of violations would not be considered on appeal).

Contrary to Vance's argument, however, the sentence quoted by Vance does not bear out his interpretation. The quoted language

appeared as part of the sixteenth and final paragraph of the order enumerating the events that led to the finding of contempt

16. The Court concluded that Mr. Vance willfully disobeyed her order to cease interrupting the proceeding and that his conduct was an obstruction to the orderly administration of justice with respect to his own case on at least three occasions.[2] The Court informed Mr. Vance that it had warned him throughout two days of the proceedings about his conduct. The Court further noted that it had been forced to interrupt testimony because Mr. Vance refused to comply with the Court's dictates and, accordingly, the court was unable to proceed in an efficient manner.

The court, therefore, did not limit itself to three particular but unspecified acts on Vance's part. Rather, as the final paragraphs of the order summarizing the court's analysis make clear, the court held Vance in contempt for his cumulative conduct rather than for any three specific instances. To quote from the trial court's written order:

[T]he Court held Mr. Vance in summary contempt for his repeated interruptions of the court proceedings after the Court had warned him and after he had acknowledged her warnings.... In sum, given the nature of the defendant's conduct, his demeanor in the courtroom throughout the day and his repeated disregard of the Court's warnings and order to cease disrupting the proceedings, it is clear that defendant's conduct was contemptuous and an affront to the Court and the administration of justice.

We have repeatedly acknowledged that summary contempt proceedings are an important tool by which trial courts maintain order, although the very nature of such summary proceedings requires that they be reserved for exceptional circumstances. *See McCormick v. United States,* 635 A.2d 347, 349–50 (D.C.1993); *see also Bethard,* 650 A.2d at 654; *In re Gorfkle,* 444 A.2d 934, 939 (D.C.1982). We conclude, based on the record, that the trial court did not err in finding "the conduct [was] so outrageous and disrup-

tive that the necessities of the administration of justice required immediate action," *McCormick,* 635 A.2d at 350 (internal quotation marks omitted), thus warranting the summary contempt judgment imposed.

 We also reject Vance's argument that the trial court abused its discretion by holding Vance without bond until sentencing. Even assuming that Vance is correct that a trial judge must sentence a contemnor immediately, *cf. Bethard,* 650 A.2d at 652 n. 1 (declining to decide the issue), Vance himself (through counsel) requested the presentencing report. Having requested application of Super. Ct.Crim. R. 32, Vance cannot now complain that it should not have been applied. In any event, since the trial judge sentenced Vance to sixty-five days (which is not challenged) and deducted from that sentence all time served, any error was harmless.

*Affirmed.*

---

**2.** A reading of the transcript reveals that the "three occasions" were three *specific* interrup- tions that had occurred in the few minutes in which Vance had taken the stand.