**Brian O. FIELDS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 00–FM–342.**

District of Columbia Court of Appeals.

Argued Nov. 21, 2001.

Decided March 21, 2002.

Robert Athanas for appellant.

Joseph W. Clark, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and John R. Fisher, Mary–Patrice Brown, and John K. Han, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, SCHWELB, and REID, Associate Judges.

SCHWELB, Associate Judge:

On January 27, 2000, the judge presiding over a hearing on an application for a civil protection order (CPO) summarily held Brian O. Fields, the respondent in the CPO proceeding, in criminal contempt of court for disobeying the judge's repeated orders not to look or stare at one of the petitioners; the judge viewed the staring as potentially intimidating. On appeal,

Fields contends that the evidence was insufficient to sustain his contempt conviction. In the alternative, Fields argues that summary contempt proceedings were not warranted. We reverse.

## I.

This case arises out of a domestic dispute involving Fields, his former girlfriend, Tyanna Weedon, and Tyanna Weedon's mother, Felicia D. Weedon. Fields rented a room in the home of Felicia D. Weedon, and he embarked on a romantic relationship with his landlady's daughter. The relationship allegedly became violent.

On January 10, 2000, Tyanna Weedon and Felicia D. Weedon each filed a petition for a civil protection order against Fields. Tyanna Weedon alleged that Fields had physically assaulted her on a number of occasions, that he had threatened to kill her, and that he had confined her in his apartment for days at a time. Felicia D. Weedon alleged that Fields made harassing telephone calls and visits to her residence and had threatened to "fuck her up" and to "beat [her] ass." On January 10, 2000, Judge Wendell P. Gardner issued a temporary protection order (TPO) in each case which prohibited Fields, *inter alia*, from abusing, threatening, or harassing the petitioners, and from contacting them by telephone, in writing, or in any other manner. Fields was also ordered not to come within 100 feet of either Ms. Weedon's residence or place of employment. A hearing on the petitioners' applications for full-fledged CPOs was set for two weeks later.

On January 24, 2000, the two petitioners and respondent Fields all appeared *pro se* before Judge Reggie B. Walton. Prior to the commencement of the hearing, Fields approached Tyanna Weedon in a hallway outside the courtroom and began to talk to her and to hold her hand. Fields was arrested by a deputy United States marshal for violating the TPO.[1] The deputy marshal informed the court that he had discussed this incident with a representative of the United States Attorney's office and that Fields would be charged with contempt of the TPO.

When the hearing began, the parties identified themselves, and the judge, obviously concerned about the possibility of intimidation,[2] immediately addressed the respondent:

THE COURT: Sir, sir. Don't look at them. You're just going to get yourself in more trouble now.

After inquiring whether Fields wished to proceed with a hearing or, instead, to consent to the issuance of the CPOs, the judge interrupted his own inquiry and again directed Fields to "[q]uit looking at" the petitioners. Fields stated that "I'm listening to you, your Honor." Preliminary matters proceeded, but soon the judge again observed Fields staring at Tyanna Weedon:

THE COURT: What do you keep looking at that lady for? How many times [have] I got to tell you not to do that?

The judge recessed the hearing until after lunch, and he ordered the deputy marshal to "step [Fields] back," apparently because Fields was under arrest for violating the TPO.

---

1. Fields acknowledged to the judge that, as reported by the marshal, he had contact with Tyanna Weedon outside the courtroom. This violation was the subject of a separate contempt proceeding, and is not directly involved in this case.

2. A few days before the hearing, Tyanna Weedon had executed an affidavit in which she claimed that her allegations against Fields were untrue.

Following the lunch break, Felicia D. Weedon took the stand. Her testimony had barely commenced when Fields violated the judge's order again by staring at Tyanna Weedon, who was seated in the back of the courtroom. The judge again ordered Fields to stop looking at Tyanna Weedon—the judge's fourth such order:

> THE COURT: I don't know if you understand what I've said to you before or not. But you have one more time to have me see you look at that lady again, and I'm holding you in contempt of court. I'm telling you, don't look at her.

Mr. Fields did not reply, and Felicia D. Weedon continued her testimony. A few minutes later, the judge had still another occasion to address the respondent:

> THE COURT: You are held in contempt of court. There must be something wrong with you. Either you don't hear well or there's something wrong in your head that's not working right. Because I keep telling you not to look over there and I just saw you look over there again.

Fields claimed that he had been looking at the back of the room, not at Tyanna Weedon, but the judge did not credit this response. After a brief exchange, the judge repeated,

> THE COURT: [T]his morning when I told you on several occasions not to look at [Tyanna Weedon], you looked at her anyhow. And my staff that was out in the audience and could see what was going on ... said that twice after I told you [not to look at her] you looked over at her and you said I love you ....
>
> I told you not to talk, not to look at her. You have an order that has already told you to have no contact with her. And you're still looking at her talking about you love her. I mean right here in the courthouse .... You're held in contempt of court.

However, concerned that the respondent was acting irrationally, the judge ordered that Fields undergo a mental competency evaluation. The judge explained that he was "going to have to delay this proceeding because—I don't know—if you're that ... defiant ... in spite of my saying what I've got to say, you just [aren't] going to listen, or whether there's something wrong with your head." When Fields responded "No, Your Honor," the judge stated that "Something's wrong. I'm going to have you talk to a psychiatrist to see if there's a problem. Because I have concerns about whether there's a problem." Apparently enraged by this course of events, Fields threw his coat; the judge assured the respondent that he (Fields) was not frightening or "buffaloing" the court by his actions.

Following the court-ordered mental health screening, a court psychiatrist reported that Fields was "competent to stand trial because mental health factors do not substantially impair his ... capacity to have a factual and rational understanding of the proceedings against him." On January 27, 2000, the judge issued civil protection orders in favor of each petitioner. The judge also confirmed his prior tentative contempt finding in a written order, as follows:

> On January 24, 2000, this matter was before the court for a civil protection order ("CPO") hearing. During the hearing and prior to the start of the hearing, the defendant was warned by the court on at least three occasions not to look at the petitioner because the court was concerned that the respondent was trying to intimidate the petitioner. Despite the court's oral instructions, the respondent continued to stare at the petitioner. Moreover, the respondent admitted in open court that shortly before the court broke for lunch he mouthed the words "I love you" to the petitioner,

in direct violation of the court's oral instructions and a temporary protection order issued by the court in this case on January 10, 2000. In light of the respondent's blatant violation of the court's repeated orders not to look at the petitioner, it is on this 27th day of January, 2000, hereby ORDERED that the defendant is found to be in criminal contempt of this court's orders.

(Footnote omitted.)

Fields was released on personal recognizance. On February 29, 2000, two days after the aborted CPO hearing, the judge sentenced Fields to imprisonment for 180 days for criminal contempt, but he suspended execution of the sentence and placed Fields on supervised probation for eighteen months. This appeal followed.

## II.

 Fields first asserts that the evidence was insufficient to support his conviction of criminal contempt. We disagree.

 When assessing evidentiary sufficiency, our standard of review is necessarily deferential. Even in summary contempt proceedings, "[w]e may not disturb the trial court['s] findings unless they are without evidentiary support or plainly wrong." *In re Vance*, 697 A.2d 42, 44 (D.C.1997) (quoting *Bethard v. District of Columbia*, 650 A.2d 651, 654 (D.C.1994) (per curiam) (internal quotation marks omitted)). Whether the acts in which the defendant was found to have engaged constitute criminal contempt, on the other hand, is a question of law, and we review the trial court's resolution of that question *de novo*. *Brooks v. United States*, 686 A.2d 214, 219 (D.C.1996).

 "The elements of criminal contempt are (1) willful disobedience (2) of a court order (3) causing an obstruction of the orderly administration of justice." *Swisher v. United States*, 572 A.2d 85, 89 (D.C.1990) (per curiam) (citing *In re Thompson*, 454 A.2d 1324, 1326 (D.C.1982) (per curiam)). The offense requires both "a contemptuous act and a wrongful state of mind." *In re Gorfkle*, 444 A.2d 934, 939 (D.C.1982). All of these elements have been satisfied in this case.

The trial judge clearly and unambiguously ordered Fields not to look at the petitioners. He gave this direction on at least four occasions. In addition, the judge informed Fields of the consequences of disobeying the order. Initially, he explained that Fields was "going to get [himself] in more trouble" if he did not stop staring at the petitioners and, especially, at Tyanna Weedon. Later, when the violations continued, the judge warned the respondent that he would be found in contempt of court if he persisted in his noncompliance.

While, as Fields maintains, he was, for the most part, courteous to the judge,[3] he did not obey the judge's orders. Indeed, the judge found that Fields' violations were "blatant." The record supports this finding; the defendant repeatedly did exactly what the judge had told him not to do.

Fields seeks reversal on the authority of *Bethard, supra*, but his reliance on that decision is unavailing. In *Bethard*, this court reversed the defendant's criminal contempt conviction for lack of proof of willfulness. The defendant, a civil litigant who was under the influence of drugs, had slept in the courtroom and later stumbled over other people while he was waiting for his coat.

---

**3.** This courtesy apparently ended when Fields had to be reproved by the judge for throwing

his own case to be called. *Id.* at 652. The trial judge found Bethard's conduct to be disruptive, and she summarily held Bethard in criminal contempt. In reversing, we noted that in her Order of Contempt, the judge "[did] not attribute willfulness to any of appellant's disruptive behavior in the courtroom," *Bethard,* 650 A.2d at 653–54, and that there was no "evidence in the court's findings, or in the transcript of the proceedings, to indicate that the court issued any order with which appellant refused to comply." *Id.* at 654. In this case, in contrast, the judge repeatedly and directly addressed Fields and ordered him to stop looking at Tyanna Weedon. Fields' repeated staring constituted willful disobedience of the judge's orders, and the judge so found.

There was also ample evidence that Fields' conduct caused an obstruction of justice. Indeed, the case had to be continued as a result of Fields' action. Moreover, in his contempt order, the trial judge stated that he was "concerned that the respondent was trying to intimidate the petitioner." He noted that Fields had already been arrested that morning for violating the TPO. Intimidation of a potential witness obviously obstructs the orderly administration of justice.

Fields contends that his alleged "looking at" Tyanna Weedon was not intimidating, but an appellate court, which is limited to a paper record, cannot second-guess the trial judge in this regard. In *In re Vance,* *supra,* the trial judge based her adjudication of criminal contempt in part on a finding that the defendant had intended, by resort to various gestures, to intimidate a key government witness while the witness was testifying. *Vance,* 697 A.2d at 43. This court deferred to the trial judge's finding on the issue, noting that "[w]rongful intent is a state of mind, and in most cases it cannot be proved directly," *id.* at 44–45 (citation omitted), and that "[w]hether [the defendant's] gestures were intimidating or not was for the trial judge, who observed his demeanor and the effect of his gestures on the witness giving testimony, to decide." *Id.* at 45. We likewise defer to the trial judge, who could observe Fields' demeanor,[4] on the question whether Fields' staring at Tyanna Weedon was intended to intimidate her or influence her testimony.

In this case, the judge was aware that Tyanna Weedon had sought a protective order and had sworn that Fields had violently attacked her on numerous occasions and had threatened to kill her. Fields had violated the TPO by approaching Tyanna Weedon before the hearing began. In the context of an allegedly abusive relationship,[5] the potential for intimidation was obvious, especially when the petitioner had first tried to withdraw her sworn allegations of abuse but had nevertheless come to court to testify. "When we take our seats on the bench we are not struck with blindness and forbidden to know as judges what we see as men or women." *Poulnot v. District of Columbia,* 608 A.2d 134, 141 (D.C.1992) (citation and internal brackets omitted). After Fields repeatedly stared at Tyanna Weedon despite the court's orders, the experienced trial judge could rea-

**4.** We note, however, that the judge did not describe in any detail the manner in which Fields was looking at Tyanna Weedon. A more specific finding would arguably have been appropriate. Nevertheless, it is evident from the record that the judge viewed the repeated staring as potentially intimidating or as an attempt to influence Tyanna Weedon's testimony (*e.g.,* by mouthing the words "I love you.").

**5.** Felicia D. Weedon testified that her daughter would return from a few days or a week with Fields, terrified, bruised, and with scratches on her neck.

sonably conclude that Fields' conduct had the purpose and the effect of inhibiting Tyanna Weedon from testifying freely and truthfully, and that Fields was attempting to impede the due administration of justice.

### III.

Fields next contends that the trial judge erred by summarily holding him in criminal contempt, without providing him with a hearing on the charge. We are constrained to agree.

Rule 42 (a) of the Superior Court's Rules of Criminal Procedure provides:

*Summary disposition.* A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the Court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

In all other cases, disposition of criminal contempts shall be upon notice and hearing, and the defendant must be given a reasonable time to prepare his defense. *See* Super. Ct.Crim. R. 42(b).

In the present case, the judge certified that the contempt was committed in his presence and that he saw and heard the conduct constituting the contempt. The terms of Rule 42(a) were thus satisfied, and there can be no doubt that we are dealing here with the type of conduct to which that Rule applies.

This does not, however, end the inquiry. The power of courts to impose summary punishment without trial is a most unusual one. *In re Oliver*, 333 U.S. 257, 274–75, 68 S.Ct. 499, 92 L.Ed. 682 (1948). The Supreme Court has described it as the "rather extraordinary power to punish without the formalities required by the Bill of Rights for the prosecution of federal crimes generally." *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954). According to one commentator, the authority to punish contempt summarily has its origin in the divine right of kings, and its existence "is understandable [only] when seen through the perspective of its age of inception, an age of allegedly divinely ordained monarchies, ruled by a king totally invested with all sovereign legal powers and accountable only to God." RONALD GOLDFARB, THE CONTEMPT POWER 11–12 (1963) (quoted in *Swisher, supra*, 572 A.2d at 95 (concurring opinion)). The summary contempt authority has been characterized as "perhaps nearest akin to despotic power of any power existing under our form of government." *Green v. United States*, 356 U.S. 165, 194, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958) (Black, J., dissenting) (quoting *State ex rel Ashbaugh v. Circuit Court*, 97 Wis. 1, 72 N.W. 193, 194–95 (1897)); *Swisher, supra*, 572 A.2d at 95 (concurring opinion).

■ "Because summary contempt proceedings represent a departure from accepted standards of due process, and because they are subject to grave abuse, the authority of courts to invoke them has been restricted to 'the least possible power adequate to the end proposed.'" *Swisher, supra*, 572 A.2d at 95 (concurring opinion) (quoting *Oliver, supra*, 333 U.S. at 274, 68 S.Ct. 499) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 230–31, 5 L.Ed. 242 (1821)). The "necessities" of the administration of justice must "require" summary disposition before a court may resort to it. *Offutt, supra*, 348 U.S. at 14, 75 S.Ct. 11. Because of the unusual nature of summary proceedings, and in light of the curtailment in such proceedings of the defendant's procedural rights, we consider *de novo* the question whether recourse to summary

disposition was warranted. *Brooks, supra,* 686 A.2d at 219.

■■■■■ At the same time, however, the authority to punish summarily for contempt in an appropriate case is essential to the existence of every court, for "[b]usiness cannot be conducted unless the court can suppress disturbances, and the only means of doing that is by immediate punishment." *Ex parte Terry,* 128 U.S. 289, 308, 9 S.Ct. 77, 32 L.Ed. 405 (1988). "[S]ummary contempt proceedings are an important tool by which trial courts maintain order, although the very nature of such summary proceedings requires that they be reserved for exceptional circumstances." *Vance, supra,* 697 A.2d at 46.

■■■■ We conclude that, in the present case, the circumstances did not "require" the judge, *Offutt, supra,* 348 U.S. at 14, 75 S.Ct. 11 to invoke the procedure contemplated by Rule 42(a). To be sure, the contemptuous conduct was committed—indeed, repeatedly committed—in the presence of the court. The judge personally saw and heard it. He also exercised considerable restraint before holding Fields in criminal contempt, for he warned him on at least four occasions regarding his conduct before the axe finally fell.

But the manner in which the judge handled the contempt adjudication itself demonstrated that summary proceedings were unnecessary and inappropriate. On his own initiative, the judge interrupted the civil protection case so that he could refer Fields for a competency screening. The judge was thus obviously unsure whether Fields was competent. The adjudication of criminal contempt was therefore necessarily conditional, and it would have to be withdrawn if Fields was found not to be competent. A significant fact relevant to Fields' guilt or innocence remained to be determined.

In *United States v. Flynt,* 756 F.2d 1352 (9th Cir.1985), the defendant, Larry Flynt, who was on trial for flag desecration, made a number of insulting, abusive, and obscene remarks in open court to a federal magistrate. He was summarily adjudicated in criminal contempt, but there was a significant issue regarding his competency. The Court of Appeals reversed the summary adjudication, explaining that

> when, at the time of the allegedly contumacious conduct, the district court has before it information that raises a substantial issue as to the criminal responsibility of the alleged contemnor, and when facts necessary to a proper resolution of that issue are beyond the personal knowledge of the judge, then there is no basis for Rule 42(a) proceedings, and summary adjudication is inappropriate.

*Id.* at 1365; *see also Panico v. United States,* 375 U.S. 29, 30–31, 84 S.Ct. 19, 11 L.Ed.2d 1 (1963) (per curiam); *Rollerson v. United States,* 119 U.S.App. D.C. 400, 407–08, 343 F.2d 269, 276–77 (1964). In this case, the trial judge was likewise uncertain about the defendant's criminal responsibility, and the appellate court's reasoning in *Flynt* supports reversal here.

■■■■ Moreover, once the proceeding against Fields had been interrupted, any need for immediate action had dissipated, for there was no longer an immediate threat that Fields would continue to disrupt an ongoing proceeding. Before resuming the civil protection case, the judge could have given notice to Fields that he was charged with criminal contempt, and could then have proceeded to trial in conformity with Rule 42(b). Counsel could have been appointed for Fields, and Fields could have been permitted to testify in his own defense and to present his own side of the story to the court. *See generally Swisher, supra,* 572 A.2d at 92–93. These rights are basic to due process and may be

dispensed with only if absolutely necessary to preserve the integrity of the judicial proceedings. No such necessity was demonstrated here.

## IV.

For the foregoing reasons, Fields' summary conviction of criminal contempt is reversed. Because the evidence was not insufficient to support the conviction, further proceedings pursuant to Rule 42(b) are not precluded. *Cf. Burks v. United States,* 437 U.S. 1, 16–18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (retrial barred where evidence at first trial was insufficient to support defendant's conviction).

*So ordered.*