
**Fred ROGERS, Appellant,**

v.

**Patricia JOHNSON, Appellee.**

**No. 03–FM–380.**

District of Columbia Court of Appeals.

Submitted Nov. 16, 2004.

Decided Dec. 9, 2004.

Boniface K. Cobbina, Washington, DC, was on the brief, for appellant.

Robert J. Spagnoletti, Attorney General for the District of Columbia, Edward Schwab, Deputy Attorney General for the District of Columbia, Janice Y. Sheppard, Assistant Attorney General for the District of Columbia, and Rosalyn Calbert Groce, Chief, Juvenile and Criminal Section, were on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges, and NEWMAN, Senior Judge.

REID, Associate Judge:

The appellant, Mr. Rogers, was found guilty of criminal contempt on March 3, 2003, for willfully failing to pay child support in violation of a support order of the District of Columbia Superior Court, *see* D.C.Code § 46–225.02 (2002). On appeal, Mr. Rogers challenges the sufficiency of the evidence. We affirm.

## FACTUAL SUMMARY

The record shows that on January 4, 1995, a permanent order of support was issued by the District of Columbia Superior Court, requiring Mr. Rogers to pay $84.00 per week to Ms. Johnson, the appellee, for the support of their three minor children. Mr. Rogers was also ordered to pay $50.00 per month to the District of Columbia as reimbursement for medicaid payments provided on behalf of his children.

Mr. Rogers made intermittent child support payments to Ms. Johnson pursuant to the court order from 1995 to 1998; however, he failed during this time to fully satisfy his financial obligations as required. As a result of his noncontinuous payments, he was twice found in contempt of court. On January 27, 1998, Mr. Rogers was held in civil contempt of court for his failure to

completely honor the support order. The court ordered that Mr. Rogers be "committ[ed] ... to the District of Columbia Jail for a period of 30 days or until such earlier time as he shall purge himself of his contempt by paying ... the sum of $300.00." And again, on July 21, 1998, Mr. Rogers was found in civil contempt of court, and the court ordered that he be "committ[ed] ... to the District of Columbia Jail for a period of 120 days or until such earlier time as he shall purge himself of his contempt by paying ... the sum of $250.00."

Thereafter, Mr. Rogers continued to ignore the full extent of his financial obligations to Ms. Johnson, so on March 3, 2003, the government, representing Ms. Johnson, filed a Motion to Show Cause Why Criminal Contempt Should Not be Entered Against Respondent. A trial was held on the government's motion on March 3, 2003, before Judge Satterfield of the Superior Court. At trial, the government asked the court to take judicial notice of the January 4, 1995 support order, as well as the January 27, 1998, and July 21, 1998, civil contempt findings; which the court noted. The government also submitted to the court a certified copy of Mr. Rogers' child support payment history. The payment history showed that Mr. Rogers owed Ms. Johnson $34,372.27 in back child support payments, and that he was similarly in arrears to the District of Columbia for $3,418.38 for his children's medicaid payments. The payment history also showed that in the twenty months after he was held in civil contempt for the second time, Mr. Rogers had only made one payment of $44.69 to Ms. Johnson. Moreover, while Mr. Rogers made sporadic child support payments from April 2000 to November 2002, the payment history showed that Ms. Johnson had only received two payments, totaling $100, in the fifteen months leading up to the trial. Mr. Rogers submitted no evidence in his defense, and instead argued during closing arguments that the government could not show that he acted "willfully" where it had not shown that he had the financial ability to pay child support.

After reviewing the evidence and arguments presented by the parties, the trial court concluded that the government had "proven each and every element beyond a reasonable doubt and [that] the defendant [was] guilty of [criminal contempt]." The court reasoned that the government had established a prima facie case, pursuant to § 46–225.02, and that Mr. Rogers had willfully violated his child support obligation where he "had knowledge of a child support order and ... failed to pay under that order." The court flatly rejected an interpretation of § 46–225.02 which would require the government to show that Mr. Rogers had the financial ability to pay Ms. Johnson to prove that he acted willfully. Instead, the court found that "the other evidence of willfulness," including "the two prior contempt findings" and "the amount of money" in arrears to Ms. Johnson, showed that Mr. Rogers was "clearly aware of the consequences of not paying." The court sentenced Mr. Rogers to one year of supervised probation, with the specific condition that he obtain and maintain employment.

## ANALYSIS

On appeal, Mr. Rogers challenges the sufficiency of the government's evidence. He argues that the government's failure to show that he was employed, or could otherwise meet his financial obligations to either Ms. Johnson or the District of Columbia, undercuts the trial court's finding that he willfully violated the child support order, and that as a consequence, the trial court erred in holding him in criminal contempt. Because we are confident that the government satisfied its

evidentiary burden in this matter, we affirm.

"On appeal of a finding of criminal contempt, we must view the evidence in the light most favorable to sustaining the judgment." *In re Vance*, 697 A.2d 42, 44 (D.C. 1997) (citing *Bethard v. District of Columbia*, 650 A.2d 651, 654 (D.C.1994) (per curiam)). "We may not disturb the trial court findings unless they are 'without evidentiary support or plainly wrong.'" *Vance*, 697 A.2d at 44 (citing *Bethard*, *supra*).

Criminal contempt prosecutions for failure to pay child support are governed by D.C.Code § 46–225.02 (2002).[1] This statute, which was enacted in November 2001 and became effective on March 6, 2002, is part of the District's efforts to improve its rate of collecting child support payments.

It "is designed to punish and deter the willful failure of noncustodial parents to comply with an order to pay child support." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, REPORT ON BILL 14–81, THE "CHILD SUPPORT ENFORCEMENT AMENDMENT ACT OF 2001," July 27, 2001, at 1. This is the first time we have considered this statute.

Section 46–225.02(b)(1) provides in pertinent part: "Upon a finding by the court that an obligor has willfully failed to obey any lawful order of child support," the court may impose specified sanctions. Section 46–225.02(d) contains a rebuttable presumption of willful failure to pay:

> For purposes of this section, failure to pay child support, as ordered, shall constitute prima facie evidence of a willful violation. This presumption may be re-

---

1. D.C.Code § 46–225.02 (2002) provides:

(a) The Mayor or any party who has a legal claim to any child support may initiate a criminal contempt action for failure to pay the support by filing a motion in the civil action in which the child support order was established.

(b)(1) Upon a finding by the court that an obligor has willfully failed to obey any lawful order of child support, the court may:

(A) Commit the obligor to jail for a term not to exceed 180 days;

(B) Order the obligor to participate in a rehabilitative program, if the court determines that participation would assist the obligor in complying with the order of child support and access to such program is available;

(C) Order the obligor to accept appropriate available employment or participate in job search and placement activities; or

(D) Place the obligor on probation under such conditions as the court may determine and in accordance with the provisions of the criminal procedure law.

(2) The court may direct that an obligor's commitment may be served upon certain specified days or parts of days. The court may suspend all or part of a sentence and may, at any time within the term of the sentence, revoke the suspension and commit the obligor for the remainder of the original sentence. A period of commitment shall not prevent the court from committing the obligor for a subsequent failure to comply with an order of child support.

(3) For the purposes of paragraph (1)(B) of this subsection, the term "rehabilitative program" shall include work preparation and skill programs, non-residential alcohol and substance abuse programs, and educational programs.

(c) The court shall order the obligor to pay the petitioner's attorney fees as well as the court costs, unless good cause can be demonstrated on the record against this result.

(d) For purposes of this section, failure to pay child support, as ordered, shall constitute prima facie evidence of a willful violation. This presumption may be rebutted if the obligor was incarcerated, hospitalized, or disabled during the period of nonsupport. These circumstances do not constitute an exhaustive list of circumstances that may be used to rebut the presumption of willfulness.

(e) The court shall not deny any request for relief pursuant to this section unless the facts and circumstances constituting the reasons for its determination are set forth in a written memorandum of decision.

butted if the obligor was incarcerated, hospitalized, or disabled during the period of nonsupport. These circumstances do not constitute an exhaustive list of circumstances that may be used to rebut the presumption of willfulness.

Mr. Rogers apparently challenges the trial court's finding that he acted "willfully." Although he does not argue that the trial court was required to make a specific finding that he was able to pay child support, he questions whether, in the absence of this showing, the court had sufficient evidence to find him guilty of criminal contempt. He claims that "the mere fact that the government has established a *prima facie* case does not compel a verdict of guilty if the evidence ... established that [he] did not have the ability to comply with the ... child support [order]." We are unpersuaded by his argument.

Here, the government presented evidence showing that Mr. Rogers was obligated by a court order to pay child support to Ms. Johnson, that he had been held in civil contempt on two previous occasions for failing to adhere to the support order, that he owed Ms. Johnson over $34,000 in missed payments, that he was in arrears to the District of Columbia for more than $3,000 for medicaid payments made on behalf of his children, and that in the fifteen months leading up to the trial he had made only two $50 payments to Ms. Johnson. Mr. Rogers presented no witnesses and did not put on a defense at trial; nor did he claim that he was unable to meet his financial obligations under the support order.[2] It is therefore uncontested, as Mr. Rogers himself acknowledges in his brief, that the government established a *prima facie* case that he willfully violated the support order.

After reviewing the government's evidence, and recognizing that Mr. Rogers had not presented any evidence that would rebut the presumption of willfulness raised by § 46–225.02(d), the trial court determined that the government had proven that Mr. Rogers had willfully disobeyed the child support order. The trial court found that Mr. Rogers had knowledge of the child support order and that he deliberately failed to make the required payments to Ms. Johnson and the District of Columbia. As such, the court concluded that the government had "proven each an every element beyond a reasonable doubt," and found Mr. Rogers "guilty of the offense" of criminal contempt.

Viewing this evidence in the light most favorable to the government, and recognizing that the trial judge's findings cannot be disturbed unless they are shown to be without evidentiary support or plainly wrong, *Vance,* 697 A.2d at 44, we conclude that there was ample evidence for the trial court to find willfulness. The government demonstrated that Mr. Rogers was obligated to pay child support to Ms. Johnson, that he was aware of his obligations under the support order, and that he had repeatedly failed to make the required payments. The government thus satisfied its burden of showing a *prima facie* case that his conduct was "willful" under §§ 46–225.02(b)(1) and 46–225.02(d).

 Once the government had established a *prima facie* case that he willfully violated the child support order, it was incumbent on Mr. Rogers to rebut the presumption that his conduct was willful

---

2. During sentencing, counsel for Mr. Rogers actually assured the trial court that Mr. Rogers would be able to meet his financial obligations under the support order, stating: "We have high hopes that the beginning of next week, he will have a job and once he is employed, he will be able to meet the terms of this order." Mr. Rogers echoed this assurance to the trial court: "I start Monday with the employment [with the Metropolitan Police Department]. And I have no reason why I'm not going to pay if I'm employed."

by showing some "circumstances" which prevented him from being able to meet his obligations, *i.e.*, that he was incarcerated, hospitalized, or disabled. D.C.Code § 46–225.02(d). As we said in *Raymond v. United States*, 396 A.2d 975, 977 (D.C. 1979), a defendant's "failure to rebut a prima facie case could result in an adverse decision [to him or her]." Indeed, "the [trial court could] find the government proved [an] element [of the crime] beyond a reasonable doubt, absent a countervailing explanation by the defendant." *Id.* at 977. Thus, while Mr. Rogers' failure to rebut the statutory presumption was not conclusive, and did not compel the trial court to rule against him, it did weigh against him. And given the strength of the government's evidence, which demonstrated that he flagrantly and repeatedly ignored his financial obligations under the support order for more than eight years,[3] we agree that Mr. Rogers willfully violated his child support obligations to Ms. Johnson, and that he was guilty beyond a reasonable doubt of criminal contempt, D.C.Code § 46–225.02.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

---

3. We recognize that when a child support order is issued in the Superior Court, the trial court is required by statute, *see* D.C.Code § 16–916.01(b), to take an "equitable approach" to fashioning an appropriate award. In doing so, the trial court considers not only the needs of the dependent children, but the "subsistence needs of each parent," the "standard of living of each household," and the total income, salary, and wages of each parent. D.C.Code § 16–916.01(b)-(c). Once issued, a child support order may be modified. Pursuant to D.C.Code § 46–204(a), "[a]ny order requiring payment of an amount of child support ... may be modified upon a showing that there has been a substantial and material change in the needs of the child or the ability of the responsible relative to pay since the day on which the order was issued." Thus, if Mr. Rogers was actually unable to meet his financial obligations under the child support order due to a substantial and material change in his circumstances, *i.e.*, unexpected unemployment, he had an available remedy at his disposal. However, the record reveals no attempt on his part to modify the child support order.